83 So.2d 235

Lucy **ABERNATHY**

v.

**Jay THORNTON et al.**

**6 Div. 874.**

Supreme Court of Alabama.

Sept. 22, 1955.

Rehearing Denied Nov. 3, 1955.

D. G. Ewing, Earl McBee, Birmingham, and Alex. Smith, Jr., David McKay Enslen, Fayette, for appellant.

John A. Altman, Carrollton, and Edwood Rutledge, Haleyville, for appellees.

Deramus, Fitts, Johnston & Mullins, Birmingham, amici curiae.

SIMPSON, Justice.

Lucy Abernathy sued Jay Thornton, O. C. Morgan and Oscar Roden for alleged invasion of her right of privacy. The trial court sustained demurrer to the complaint and by reason of this adverse ruling the plaintiff took a nonsuit and brought this appeal.

The pertinent allegations of the complaint on which the plaintiff sought to rest her right of action are: In June, 1953, the defendants Thornton and Morgan were engaged in publishing a newspaper in Fayette, Fayette County, Alabama, under the name of *The Northwest Alabamian and The Fayette Banner*. Roden was employed by the newspaper as a reporter. On June 9, 1953, Curtis J. Abernathy, Jr., son of the plaintiff, was shot and killed in Winfield, Marion County, Alabama, by a bullet from a rifle striking him behind his left ear. The body of the deceased was carried to a funeral home, and while there the defendant Roden took a picture of the upper portion of deceased's body showing a metal object protruding from his head. On the 11th of June the picture was published in said newspaper, together with a news story of the shooting. The newspaper account was that a woman named Ann Hall, who had lived in Fayette as Mrs. C. J. Abernathy, Jr., before moving to Winfield, was placed in jail and charged with the murder of the plaintiff's son. It was also stated that the deceased was on parole from a federal offense and had served time in Kilby Prison (Alabama State Penitentiary), which account also reported that law enforcement officers were investigating the case. No mention was made of the plaintiff in the news story and nothing therein or on the accompanying photograph showed any relationship between the plaintiff and the deceased.

■ This court has had occasion recently to consider what constitutes an actionable invasion of the right of privacy. The action, of course, is in tort and it is said to be the unwarranted appropriation of exploitation of one's personality, the publicizing of one's private affairs with which the public has no legitimate concern, or the wrongful intrusion into one's private activities, in such manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities. Smith v. Doss, 251 Ala. 250, 37 So.2d 118; Birmingham Broadcasting Co. v. Bell, 259 Ala. 656, 68 So.2d 314.

But as was held in these two cases, the right of privacy does not prohibit the publication of matters which are of legitimate public or general interest, as where the plaintiff has become a public character and has thereby waived his right to privacy; or in the ordinary dissemination of news and events or in connection with the life of any person in whom the public has a rightful interest or where the information would be of public benefit.

■ It was pointed out in the Bell case, supra, that while a public character does not relinquish his right of privacy and his waiver thereof is limited to that which may be legitimately necessary and proper for public information, if the use of his name or picture is incidental to an occurrence of legitimate news value his right of privacy has not been unlawfully invaded.

One of the approved' statements of the principle, pertinent here, is found in 4 Restatement of the Law (Torts), § 867, p. 400:

> "One who unwillingly comes into the public eye because of his own fault, as in the case of a criminal, is subject to the same limitations upon his right to be let alone. Community custom achieves the same result with reference to one unjustly charged with crime or the subject of a striking catastrophe. Both groups of persons are the objects of legitimate public interest during a period of time after their conduct or misfortune has brought them to the public attention; until they have reverted to the lawful and unexciting life led by the great bulk of the community, they are subject to the privileges which publishers have to satisfy the curiosity of the public as to their leaders, heroes, villains and victims."

The following from Cases on Torts, p. 504, by Hepburn (former dean of the University of Alabama Law School), impresses us as being a good statement of the theory:

> "The right of privacy as recognized in a number of states has been defined as follows: 'The right of privacy may be defined as the right to live one's life in seclusion, without being subjected to unwarranted and undesired publicity. In short it is the right to be let alone. 21 RCL 1197, 1198. There are times, however, when one, whether willingly or not, becomes an actor in an occurrence of public or general interest. When this takes place, he emerges from his seclusion and it is not an invasion of his right of privacy to publish his photograph with an account of such occurrence. Jones v. Herald Post Co., 230 Ky. 227, 18 S.W.2d 972. A few general principles founded on authority or reason, seem to run through most of the better considered decisions from the jurisdictions which recognize the doctrine as well as those which do not. We may summarize them as follows: (1) The right of privacy was unknown to the ancient common law. (2) It is an incident of the person and not of property—a tort for which a right of recovery is given in some jurisdictions. (3) It is a purely personal action and does not survive but dies with the person. (4) It does not exist where the person has published the material complained of or consented thereto. It does not exist where a person has become so prominent that by his very prominence he has dedicated his life to the public and thereby waived his right to privacy. (5) There can be no privacy in that which is already public. (6) It does not exist in the dissemination of news and news events nor in the discussion of events of the life of a person in whom the public has a rightful interest, nor where the information would be of public benefit as in the case of a candidate for public office. (7) The right of privacy can only be violated by printings, writings, pictures, or other printed publications or reproductions, and not by word of mouth. The right of action accrues when the publication is made for gain or profit.'"

■ Guided by these general principles, it is made clear that the complaint fails to state a cause of action. The plaintiff rests her right on what is denominated "relational" right of privacy. That is, the right to be spared unhappiness through publicity concerning her dead son because of her relationship to him. We may lay aside a determination of the soundness vel non of such a theory; and conceding its correctness for purposes of decision here, the plaintiff would still have no right of action. Her son had become such a public character that, had he not died, the photographs and publication of the circumstances of his death were matters of legitimate public interest in the proper dissemination of news through the newspapers and he had thus forfeited his claim to privacy, and the relational right must be subject to at least the same limitations as the ordinary right of privacy. Smith v. Doss, supra; Washington University Law Quarterly 1953, pp. 109–112.

Hence Mrs. Abernathy still makes no showing of actionable violation of any right of privacy, even under the relational theory. In addition to the fact that nowhere was she mentioned in the publication, her son, by his conduct, had become at least sufficiently notorious to have waived his right of privacy that would prevent the publication of his picture in connection with the newspaper story. See Metter v. Los Angeles Examiner, 35 Cal.App.2d 304, 95 P.2d 491.

Affirmed.

LIVINGSTON, C. J., and GOODWYN and MAYFIELD, JJ., concur.

On Rehearing

SIMPSON, Justice.

■ As will appear from the opinion on original deliverance, the complaint attempted to state a cause of action for the invasion of the right of privacy. Yet on rehearing the appellant treats the argument as if she were claiming a trespass or some kind of tort against the deceased's body and vesting the right of action in her because its allegations show a right of action arising out of interference with burial rights. We deem this argument as inappropriate inasmuch as the complaint failed to allege any actionable trespass on the body as such or any unwarranted interference with burial rights, but depended solely on the invasion of the right of privacy as the cause of action.

As pointed out previously, without deciding whether or not a cause of action for an invasion of the right of privacy was stated, it was the opinion of the court—and still is —that in this suit the notoriety of the deceased as shown by the complaint constituted a forfeiture of any claims to privacy, resulting that the judgment of nonsuit was well sustained.

Opinion extended and application for rehearing overruled.

LIVINGSTON, C. J., and GOODWYN and MAYFIELD, JJ., concur.