533 So.2d 525 (1988)
James Thomas HOGIN and Katherine Hogin
v.
T. Thomas COTTINGHAM.
86-918.
Supreme Court of Alabama.
July 15, 1988.
Rehearing Denied September 16, 1988.
*526 William M. Dawson and Perry N. Martin, Birmingham, for appellants.
Jack B. McNamee and Thomas W. Bowron II, Birmingham, for appellee.
PER CURIAM.
James Thomas Hogin and Katherine Hogin sued T. Thomas Cottingham for invasion of privacy, outrageous conduct, and intentional or reckless infliction of emotional distress. The trial court granted Cottingham's motion for summary judgment, and the plaintiffs appeal. We affirm in part, reverse in part, and remand.
The Hogins are the parents of two daughters. A Birmingham newspaper took a picture of the younger daughter, a six-year-old, at her elementary school and published the picture with a brief article about the spring season. The child's name was not mentioned in the article.
Cottingham, a Birmingham lawyer, was contacted by one of his firm's clients, who had seen the picture of the Hogins' daughter. According to Cottingham, the client asked him to obtain the identity of the child because she resembled the daughter of a friend with whom the client had lost contact. Cottingham also stated that the client was concerned that his friend might need financial help, which the client was now able to offer.
Cottingham went to the principal's office at the elementary school attended by the Hogins' daughters and told the principal that he was seeking the identity of the child in the newspaper article. Cottingham gave his business card to the principal, but she did not believe he was a lawyer and would not give him any information. Later that day, Mrs. Hogin called the school to leave a message that her daughters were to walk to a nearby public library after school. When she was told of Cottingham's visit, Mrs. Hogin became upset and called her husband. Mr. Hogin picked up the girls at the school and took them to their grandmother's house; he then returned to the school to see the principal.
In his deposition, Mr. Hogin stated that the principal told him about Cottingham's visit. He testified that when he asked about the reason for Cottingham's inquiry, the principal told him that Cottingham's client wanted to find out whether the child in the newspaper picture was the daughter of former friends in need of financial help. Mr. Hogin also stated that the principal informed him that Cottingham had said that the principal "might as well go ahead and tell [Cottingham] who the child was" because he could get the child's identity by having her followed by a private detective.
Alarmed and concerned by Cottingham's inquiry, the Hogins discussed the incident that night. The next day, Mrs. Hogin, a secretary in the Jefferson County Circuit Court, contacted a circuit judge, who recommended that she contact the Birmingham Police Department. That same day, Mr. Hogin went to Cottingham's office. Mr. Hogin testified that Cottingham told him that he had nothing to worry about, but that Cottingham refused to divulge the identity of the client, claiming attorney-client privilege.
*527 The Hogins were not satisfied with Cottingham's response and continued to worry about the safety of their children. Mr. Hogin purchased a "beeper" so that he could be contacted immediately by his wife or his daughters if necessary. The Hogins alleged that because they discussed the problem with their daughters, the children became distraught and fearful.
Mrs. Hogin again contacted the circuit judge and told him that her main concern was the identity of Cottingham's client. The judge met with Cottingham and then told Mrs. Hogin that Cottingham believed his client's story and that Mrs. Hogin had no need to worry.
Because of the alleged adverse effects Cottingham's inquiry and refusal to divulge his client's identity had on the Hogins and their children, the Hogins sued Cottingham and fictitious parties, alleging invasion of privacy, outrageous conduct, and intentional or reckless infliction of emotional distress. The Hogins "invoke[d] the equitable powers of [the trial court] to discern the identity and purposes pursued by the persons employing [Cottingham]." The Hogins also requested the right to amend the complaint and to add defendants as their identities became known.
Despite the service of interrogatories and three motions to compel answers to those interrogatories, Cottingham refused to answer or to divulge the identity of his client. The trial court ordered that Cottingham identify the party seeking the identity of the Hogins' daughter. Cottingham's motion for reconsideration of this order, based on grounds of private information, attorney work product, confidences and secrets of a client, and the prohibitions of Canon 4 and DR 4-101(B) of the Canons of Ethics of the Alabama State Bar, was overruled. The Hogins filed a motion for sanctions against Cottingham, and the trial court entered an order that provided that unless Cottingham "respond to production or meet with unidentified witness" within seven days, a default judgment would be entered against him.
Cottingham filed a motion for summary judgment (based on the pleadings and the Hogins' depositions), which was granted by the trial court on November 3, 1986, and filed in the circuit court clerk's office on November 5, 1986.[1] On December 2, 1986, the Hogins filed a motion for new trial and an amended complaint that added, as a defendant, W.E. Sistrunk, naming him as "that individual disclosed by Defendant, Cottingham, as being responsible for the actions complained of in the complaint."[2] The Hogins' motion for a new trial was not ruled on within 90 days by the trial court and, therefore, was overruled pursuant to Rule 59.1, A.R.Civ.P.
In support of their argument that the record before the trial court provided sufficient evidence in support of their claims to preclude the summary judgment, the Hogins rely on this Court's holding in Phillips v. Smalley Maintenance Services, Inc., 435 So.2d 705 (Ala.1983). In answering a certified question from the Eleventh Circuit Court of Appeals regarding the plaintiff's state law claim of invasion of privacy, the Phillips Court wrote:
"Since 1948, beginning with the case of Smith v. Doss, 251 Ala. 250, 37 So.2d 118 (1948), Alabama has recognized the tort of `invasion of the right of privacy.' [Citations omitted.]
*528 "It is generally accepted that the invasion of privacy tort consists of four distinct wrongs: 1) the intrusion upon the plaintiff's physical solitude or seclusion; 2) publicity which violates the ordinary decencies; 3) putting the plaintiff in a false, but not necessarily defamatory, position in the public eye; and 4) the appropriation of some element of the plaintiff's personality for a commercial use. Norris v. Moskin Stores, Inc., 272 Ala. 174, 132 So.2d 321 (1961), citing W. Prosser, Law of Torts, pp. 637-39. (2d ed. 1955).
"The Norris Court said:
"`We think this analysis fundamentally consistent with our statement in the Doss case ... that the right of privacy is "`the right of a person to be free from unwarranted publicity,' or [from] `the unwarranted appropriation or exploitation of one's personality, the publicizing of one's private affairs with which the public has no legitimate concern or the wrongful intrusion into one's private activities in such manner as to outrage or cause mental suffering, shame, or humiliation to a person of ordinary sensibilities.'"' [Emphasis added.]
". . .
"Restatement (Second) of Torts, § 652B, and its Comment, enunciate a clear and concise definition, and establish the perimeter, of the `wrongful intrusion' tort, which, when read in light of our own case law, affords meaningful guidelines for the adjudication of such actions....
". . .
"The Court of Appeals' second query is as follows: `[M]ust information about the plaintiff's "private activities" actually be acquired through the intrusion before the cause of action is established?'
". . .
"Illustration 5 to § 652B finds liability for `wrongful intrusion' or `intrusion upon seclusion' where a photographer makes numerous calls to a person at all times of the day and night, insisting that he be allowed to photograph her. The photographer ignored the lady's pleas that he desist....
"We hold that acquisition of information from a plaintiff is not a requisite element of a § 652B cause of action.
". . .
"Defendants argue that, if the claimed invasion of one's right to privacy is the attempted acquisition of information about a plaintiff's private matters or affairs, then it necessarily follows that such attempted acquisition must be made `surreptitiously.' We disagree.
". . .
"We find untenable Defendants' position that, because Smalley's actions occurred `out in the open,' Plaintiff's cause of action should be barred. We decline to hold that `surreptitious' or `clandestine' activities are necessary elements of § 652B liability....
". . .
"Stated succinctly, the [next] query posed ... is the necessity vel non that a defendant invade some `physically defined area or place' as opposed to one's `personality' or `psychological integrity' in order to trigger liability under § 652B....
". . .
"Section 652B places liability on one who `intentionally intrudes, physically or otherwise' in the proscribed manner. Comment (b) to this section states:
"`The invasion may be physical intrusion into a place in which the plaintiff has secluded himself, as when the defendant forces his way into the plaintiff's room in a hotel or insists over the plaintiff's objections in entering his home. It may also be use of the defendant's senses, with or without mechanical aids, to oversee or overhear the plaintiff's private affairs, as by looking into his upstairs window with binoculars or tapping his telephone wires. It may be by some other form of investigation or examination into his private concerns....' (Emphasis added [in Smalley].)
". . .
"Comment (c) states in part:
*529 "`The defendant is subject to liability under the rules stated in this Section only when he has intruded into a private place, or has otherwise invaded a private seclusion that the plaintiff has thrown about his person or affairs.' (Emphasis added [in Smalley].)
"Comment (c) also points out that the `wrongful intrusion' privacy violation can occur in a public place, when the matter intruded upon is of a sufficiently personal nature...."
Phillips, 435 So.2d at 708-11.
Because Phillips cited Smith v. Doss, supra, and quoted at length from Norris v. Moskin Stores, Inc., supra, a brief discussion of those two cases may be helpful.
The Doss Court held:
"[The right of privacy] has been defined `as [1] the right of a person to be free from unwarranted publicity' or [2] `the unwarranted appropriation or exploitation of one's personality, [3] the publicizing of one's private affairs with which the public has no legitimate concern, or [4] the wrongful intrusion into one's private activities in such manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities.' " (Emphasis supplied.)
Doss, supra, 251 Ala. at 252-53, 37 So.2d at 120; quoting 41 Am.Jur., p. 925.
The Norris Court, in 1961, modified or expanded the Doss definition of the tort:
"(1) `[T]he intrusion upon the plaintiff's physical solitude or seclusion,' (2) `publicity which violates the ordinary decencies,' (3) `putting the plaintiff in a false but not necessarily defamatory position in the public eye,' and (4) `the appropriation of some element of the plaintiff's personality for a commercial use.'"
Norris, supra, 272 Ala. at 176, 132 So.2d at 323; (quoting W. Prosser, Law of Torts 637-39 (2d ed. 1955)).[3]
Understandably, confusion arises from the fact that the public or commercial use or publication standards were first set forth in Norris, but then held by the Norris Court not to be essential to prove the tort of invasion of privacy. In practice, then, this Court has two separate standards for finding the tort of an invasion of privacy, depending on whether there was a public or commercial use or a publication of private information, or whether there was simply a direct intrusion into another person's private affairs.
Although Norris is actually the first case to enunciate the public or commercial use or publication standard, that case did not involve either public or commercial exploitation or publication of private information. In Norris, a creditor was attempting to collect a debt from its customer. A representative of the creditor called the plaintiff's wife and stated that she had met and dated the plaintiff's husband and that she needed to get in touch with him on a very important matter. The plaintiff sued the creditor for invasion of the right of privacy on the ground that the creditor had intentionally interfered with the plaintiff's marital relations. Citing Prosser's definition of invasion of privacy, which included the public or commercial use or publication standards, the Court concluded that Prosser's definition was "fundamentally consistent" with the prior decisions in Doss, supra (holding that personal information regarding the plaintiff's family that was broadcast on a radio program was within the legitimate public interest), and in Abernathy v. Thornton, 263 Ala. 496, 83 So.2d 235 (1955) (holding that publication of information regarding a murder was within the legitimate concern of the public). What the Court did not specifically state was that both Doss and Abernathy, unlike Norris, involved publication or commercial use of personal information.
*530 In addition to the public or commercial use or publication standard, the Norris Court also adopted language from Doss stating that an invasion of privacy is an "unwarranted appropriation or exploitation of one's personality ... or, the wrongful intrusion into one's private activities." (Emphasis supplied in Norris, supra.) Although Norris included the public or commercial use or publication standard in its definition of invasion of privacy, the Court recognized that a valid invasion of privacy claim is not limited to cases involving the public or commercial use or publication of private information:
"The earlier cases decided by this court have concerned situations in which it was claimed that the defendant had given unwarranted and intrusive publicity to the private affairs of the plaintiff, Smith v. Doss, supra, and Abernathy v. Thornton, 263 Ala. 496, 83 So.2d 235, or had made unauthorized use of plaintiff's name for commercial purposes. Birmingham Broadcasting Co. v. Bell, 259 Ala. 656, 68 So.2d 314; 263 Ala. 355, 82 So.2d 345. But nothing in the foregoing cases shows that the action for invasion of privacy is necessarily limited to those situations alone. For example, a cause of action for invasion of privacy has been held to lie for unwarranted intrusion by means of a listening device (McDaniel v. Atlanta Coca-Cola Bottling Co., 60 Ga. App. 92, 2 S.E.2d 810, 811; Roach v. Harper, W.Va., 105 S.E.2d 564), for persistent shadowing (Schultz v. Frankfort Marine, Acci. & P.G. Ins. Co., 151 Wis. 537, 139 N.W. 386, 43 L.R.A., N.S., 520), and for a shop manager's angrily and roughly accosting a female customer and searching her coat and purse (Bennett v. Norban, 396 Pa. 94, 151 A.2d 476, 71 A.L.R.2d 803)."
Norris, supra, 272 Ala. at 176, 132 So.2d at 322-23.
Thus, the Norris Court emphasized the "wrongful intrusion" language from Doss and concluded that there was sufficient evidence of invasion of privacy to sustain the plaintiff's claim, even though there was no commercial use or publication of the information obtained by the creditor.
Additionally, there is language in Phillips illustrating the fact that neither communication nor publication was required. The Phillips Court, adopting Restatement (Second) of Torts, § 652B, stated:
"[W]e cannot agree that 652B's application must be triggered by some `communication' or `publication' by a defendant to a third party of any private information elicited from a plaintiff. Comment (a) of § 652B, in pertinent part, states, `The form of invasion of privacy covered by this Section does not depend upon any publicity given to the person whose interest is invaded or to his affairs.' Comment (b) goes on to say: `The intrusion itself makes the defendant subject to liability, even though there is no publication....'"
Phillips, supra, 435 So.2d at 709. Clearly, if this Court has so recently decided that publication or communication is not necessary to prove a case of invasion of privacy, then certainly there can be no requirement for the additional element of a public or commercial use of the information.
Thus, this Court may apply the law of both Doss and Norris to find the tort of invasion of privacy in cases where there is no public or commercial use or publication. Practically speaking, the Norris Court set out two separate standards for finding the tort of an invasion of privacy: 1) If there has not been public or commercial use or publication, then the proper standard is whether there has been an "intrusion upon the plaintiff's physical solitude or seclusion," Norris, 272 Ala. at 176, 132 So.2d at 323, Phillips, at 710, or a "wrongful intrusion into one's private activities in such manner so as to outrage or to cause mental suffering, shame or humiliation to a person of ordinary sensibilities," Doss, 251 Ala. at 253, 37 So.2d at 120; and 2) if there has been public or commercial use or publication of private information, then the proper standard is whether there has been "unwarranted publicity," "unwarranted appropriation or exploitation of one's personality," publication of private affairs not within the legitimate concern of the public, Doss, 251 Ala. at 252-53, 37 *531 So.2d at 120, an intrusion into one's "physical solitude or seclusion," the placing of one in a "false but not necessarily defamatory position in the public eye," or an "appropriation of some element of [one's] personality for commercial use," Norris, 272 Ala. at 176, 132 So.2d at 323.
Because there was no commercial use or publication of the information sought by Cottingham, we must apply the "wrongful intrusion" test to the facts of the instant case.
The "wrongful intrusion" prong of the tort of invasion of privacy has been defined as the "intentional interference with another's interest in solitude or seclusion, either as to his person or to his private affairs or concerns."[4] W. Prosser & W. Keeton, The Law of Torts, p. 851 (5th ed. 1984). "[T]here must be something in the nature of prying or intrusion" and "the intrusion must be something which would be offensive or objectionable to a reasonable person. The thing into which there is intrusion or prying must be, and be entitled to be, private." Id. at 855. Two primary factors are considered in "determining whether or not an intrusion which effects access to private information is actionable. The first is the means used. The second is the defendant's purpose for obtaining the information." Id. at 856.
Before deciding whether there was an offensive or objectionable prying or intrusion, we must decide whether the thing (the identity of the child) into which there was an intrusion or prying must be, or is entitled to be, private. Do the parents of a child have a right to keep their child's identity private? In the abstract, parents have an interest in protecting the identity of their children. However, not every attempt to find out the identity of the child is an invasion of privacy.
In Alabama Electric Co-Operative, Inc. v. Partridge, 284 Ala. 442, 445, 225 So.2d 848, 850 (1969), the Court noted with approval that other authorities had held that "violation of the right of privacy may be actionable where the investigation of a person being watched, trailed, shadowed, or kept under surveillance is pursued in an offensive or improper manner." See also Annot., 13 A.L.R.3d 1025 (1967). Partridge and the cases cited at 13 A.L.R.3d 1025 (1967) are predicated on the fact that the persons whose privacy was allegedly invaded had filed claims for personal injuries and therefore should have expected reasonable inquiry or investigation to be made of their claims. While the plaintiffs in this case have not filed any claim that might reasonably invoke investigation, nevertheless, because the child's picture had been published in a newspaper, it would not be unreasonable for them to expect some inquiry concerning the identity of the child. Cottingham's client was concerned that the child was that of a friend who might need financial help. We find nothing in the purpose of the inquiry as to the identity of the child that would support an action for invasion of privacy.
The only question, then, is whether the means used were offensive or objectionable. The newspaper photograph identified the child only as a student at a particular school; therefore, it would not be unreasonable to expect an inquiry to be made at the school. Was the method of inquiry at the school objectionable? Cottingham identified himself as an attorney representing a client interested in the identity of the child. That in and of itself is not objectionable. What the Hogins contend are factual issues on the question of reasonableness are Cottingham's unwillingness to disclose his client's identity, the alleged threat to place the child under surveillance and his alleged "abrupt manner" toward Mrs. Hogin.
While Cottingham would not disclose his client's identity, he did disclose the purpose his client had for seeking the identity of *532 the child. The Hogins seem to put great emphasis on the fact that Cottingham refused to identify the client even after repeated requests to do so by the plaintiffs and the trial court. However, it should be noted that the plaintiffs had already sued by the time most of the requests for disclosure were made and, therefore, those subsequent requests and denials can not serve as a basis for the cause of action.
As to Cottingham's alleged threat to put the child under surveillance, the question must be: What else, if anything, was he to do if the school refused to name the child? Surely it would have been more offensive to accost the child, given the fact that children today are taught to avoid giving strangers any information. On the other hand, Cottingham did request that the principal have the child's parents contact him, and he could have waited for a response before taking further action.
Neither of the actions described above, taken alone, is unreasonable or objectionable enough to rise to the level of an invasion of privacy. However, when taken together, along with Cottingham's alleged "abrupt manner," we agree that a factual issue did exist as to whether the means used were improper, offensive, and unreasonable. Therefore, we agree that summary judgment was improper on the invasion of privacy claim.
Cottingham maintains he had a right not to disclose the identity of his client on the basis of a lawyer/client privilege. We find, however, that the trial court was correct in not allowing Cottingham to "hide" his conduct behind the argument that he was performing a protected legal service for a client. Cottingham's service for Sistrunk fell far outside the protection afforded by the privilege. See Harris v. State, 281 Ala. 622, 206 So.2d 868 (1968).
Cottingham also points out that, one month after the entry of summary judgment and six months after Cottingham had disclosed the identity of his client, the plaintiffs amended their complaint to add his client as a defendant. Therefore, argues Cottingham, the plaintiffs did not vigorously pursue their claimseven after disclosure of the client's nameand should not now be allowed to proceed. As this cause is now postured before us, however, Cottingham's argument is of no consequence. Unless the Hogins prevail in their attack on this summary judgment in favor of Cottingham, they can not prevail against Sistrunk. Whether the plaintiffs pursue their claims against Sistrunk on remand is outside the issues now before this Court.
Although the Hogins have made claims based on other theories, their right to redress is fully encompassed in their right-of-privacy claim and we have therefore confined our discussion to that theory. Therefore, we affirm the judgment as to the theories based on outrageous conduct and intentional or reckless infliction of emotional distress (all of which are elements in the right of privacy theory); and we reverse the judgment as to the claim for violation of the plaintiffs' right of privacy.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
TORBERT, C.J., and JONES, ALMON, SHORES and STEAGALL, JJ., concur.
MADDOX, BEATTY and HOUSTON, JJ., dissent.
HOUSTON, Justice (dissenting).
I cannot hold that Cottingham's actions, when viewed rationally with all reasonable inferences that can be drawn therefrom, constitutedor could be found to constitutea wrongful intrusion into the Hogins' private affairs in such a manner as to outrage, or cause mental suffering, shame, or humiliation to, persons of ordinary sensibilities. Phillips v. Smalley Maintenance Services, 435 So.2d 705 (Ala.1983). Certainly, there is not a scintilla of evidence of any of the other three situations enumerated in Norris v. Moskin Stores, Inc., 272 Ala. 174, 132 So.2d 321 (1961), that can give rise to an action for invasion of privacy. We have created a new torta tort that could certainly impose liability on the inquiring *533 Magi in the second chapter of Matthew. I must dissent.
MADDOX and BEATTY, JJ., concur.
NOTES
[1] During the pendency of this cause, the presiding judge of the Jefferson County Circuit Court, the Honorable John N. Bryan, Jr., wrote a letter to the Honorable C.C. Torbert, Jr., Chief Justice of the Supreme Court of Alabama, stating: "This case involves a legal malpractice action against a local attorney who very frequently appears in all civil courts of this circuit. The judge assigned the case has recused himself, and, upon consultation with other judges of this circuit, each feels that it would be inappropriate that he handle this case due to the frequent contact with the defendant. It is requested that a judge from outside this county be assigned this case to handle necessary pretrial and trial of case thereafter." The Honorable Braxton L. Kittrell, Jr., Judge of the Mobile Circuit Court, was assigned the case. He entered the summary judgment.
[2] Cottingham had disclosed the name of his firm's client, W.E. Sistrunk, to the Hogins during the summer of 1986, following the trial court's granting of the Hogins' motion to compel and its overruling of Cottingham's motion for reconsideration.
[3] "Elements" (2), (3), and (4) of the Prosser definition and "elements" [1], [2], and [3] of the Doss definition of the tort of "invasion of the right of privacy" require some public or commercial use or publication of private information. We will refer to these "elements" as the "commercial elements." It should be noted, however, that the conjunctive "Prosser standard" is stated in the context of commercial use or publication and not to the exclusion of the tort absent such uses.
[4] It is interesting to note that the wrongful intrusion prong of the tort as defined in Norris v. Moskin Stores, Inc., 272 Ala. 174, 132 So.2d 321 (1961), requires that the intrusion cause outrage or mental suffering, shame, or humiliation to a person of ordinary sensibilities. Norris was decided before the Court recognized the tort of outrage in American Road Service Co. v. Inmon, 394 So.2d 361 (Ala.1981), which employs a somewhat similar definition in defining that tort.