780 So.2d 685 (2000)
I.C.U. INVESTIGATIONS, INC.
v.
Charles R. JONES.
1981714.
Supreme Court of Alabama.
June 30, 2000.
Order Overruling Rehearing September 1, 2000.
*687 Jack R. Thompson, Jr., of Kracke, Thompson & Ellis, P.C., Birmingham, for appellant.
Lister H. Proctor and J. Bradley Proctor of Proctor & Vaughn, Sylacauga, for appellee.
BROWN, Justice.
A jury found in favor of Charles R. Jones on his invasion-of-privacy claim, awarding him $100,000 against the defendant I.C.U. Investigations, Inc. ("ICU"). ICU appeals, arguing that the court erred in denying its motion for a judgment as a matter of law on that claim.
Jones was employed by Alabama Power Company ("APCo") as a groundman and winch-truck driver. While working on February 26, 1990, he suffered an electric shock and fell from the bed of the truck, dislocating and fracturing his left shoulder. Following his injury, he underwent five operations for problems with his shoulder, neck, back, and ribs. Jones sued APCo for workers' compensation benefits; APCo disputed the extent of his disability.
In preparation for the workers' compensation trial, APCo hired ICU, an investigation firm, to watch Jones's daily activities. ICU was owned and operated by Kevin Hand. Hand and another investigator for ICU, Johnson Brown, went to Clay County to monitor Jones's activities. ICU investigated Jones for 11 or 12 days during February and March 1998.[1] Jones lived in a mobile home at the intersection of Highway 77 and County Road 79; the front of his residence faced County Road 79. Jones testified that his mobile home was approximately 200 yards from Highway 77 and a "lot closer" to County Road 79. The front yard was visible from both Highway 77 and County Road 79. When watching Jones at his home, Hand would videotape from a motor vehicle parked on the shoulder of Highway 77 or County Road 79.[2] Neither Hand nor Brown entered onto Jones's property. When Hand or Brown recorded Jones's activities in the nearby town of Wadley, they filmed from a vehicle parked on a public street or in a parking lot.
On at least four occasions, Hand taped Jones urinating in his front yard. Hand testified that when he videotaped Jones's activities, he often watched with his naked eye; thus, he said only once had he suspected that Jones was urinating. At the end of each day's surveillance or soon *688 thereafter, Hand copied the tapes and sent the copies to APCo's attorney.
When Jones learned that Hand had videotaped him urinating in his yard, Jones filed another lawsuit against APCo, adding as defendants ICU and Hand. He alleged that APCo and ICU had been negligent or wanton in hiring and supervising their employees, and he alleged that all three defendants had invaded his privacy. APCo, ICU, and Hand each moved for a summary judgment. The court granted APCo's motion, but denied ICU and Hand's motions. Jones later dismissed Hand.
After Jones rested his case, ICU moved for a judgment as a matter of law ("JML") on the invasion-of-privacy claim. The trial court denied the motion. ICU renewed its motion for a JML at the close of all the evidence. The motion was again denied. At the close of all the evidence, the judge, the jury, and the attorneys for each side visited Jones's property to view the location of the videotaping; they then returned to the courtroom for closing arguments and the trial judge's oral charge. The trial court submitted only the invasion-of-privacy claim to the jury. The jury returned a verdict in favor of Jones on the invasion-of-privacy claim, awarding him $75,000 in compensatory damages and $25,000 in punitive damages. On March 3, 1999, ICU filed a renewed motion for a JML, or, in the alternative, for a new trial or an order requiring a remittitur. The trial court did not rule on the motion, and the motion was denied by operation of law, Rule 59.1, Ala. R. Civ. P.
ICU argues that the court erred in denying its motion for a JML on Jones's invasion-of-privacy claim. We have stated, in regard to review of a motion for a JML and a renewed motion for a JML:
"[T]his Court uses the same standard the trial court used initially in granting or denying a JML. Palm Harbor Homes, Inc. v. Crawford, 689 So.2d 3 (Ala.1997). Regarding questions of fact, the ultimate question is whether the nonmovant has presented sufficient evidence to allow the case or the issue to be submitted to the jury for a factual resolution. Carter v. Henderson, 598 So.2d 1350 (Ala.1992). For actions filed after June 11, 1987, the nonmovant must present `substantial evidence' in order to withstand a motion for a JML. See § 12-21-12, Ala.Code 1975; West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989). A reviewing court must determine whether the party who bears the burden of proof has produced substantial evidence creating a factual dispute requiring resolution by the jury. Carter, 598 So.2d at 1353. In reviewing a ruling on a motion for a JML, this Court views the evidence in the light most favorable to the nonmovant and entertains such reasonable inferences as the jury would have been free to draw. Motion Industries, Inc. v. Pate, 678 So.2d 724 (Ala.1996). Regarding a question of law, however, this Court indulges no presumption of correctness as to the trial court's ruling. Ricwil, Inc. v. S.L. Pappas & Co., 599 So.2d 1126 (Ala.1992).
"Furthermore, a jury verdict is presumed to be correct, and that presumption is strengthened by the trial court's denial of a motion for a new trial. Cobb v. MacMillan Bloedel, Inc., 604 So.2d 344 (Ala.1992). In reviewing a jury verdict, an appellate court must consider the evidence in the light most favorable to the prevailing party, and it will set aside the verdict only if it is plainly and palpably wrong. Id."

Delchamps, Inc. v. Bryant, 738 So.2d 824, 830-31 (Ala.1999).
In Johnson v. Corporate Special Services, Inc., 602 So.2d 385 (Ala. 1992), this Court addressed the law applicable to invasion-of-privacy claims:
"This Court recognizes that the wrongful intrusion into one's private activities constitutes a tort known as the invasion of privacy. Alabama Electric *689 Co-operative, Inc. v. Partridge, 284 Ala. 442, 445, 225 So.2d 848, 851 (1969). This Court in Norris v. Moskin Stores, Inc., 272 Ala. 174, 132 So.2d 321 (1961), following W. Prosser, Law of Torts, pp. 637-39 (2d ed.1955), set out the `four distinct wrongs' of the tort of invasion of privacy:
"`1) the intrusion upon the plaintiff's physical solitude or seclusion; 2) publicity which violates the ordinary decencies; 3) putting the plaintiff in a false, but not necessarily defamatory, position in the public eye; and 4) the appropriation of some element of the plaintiff's personality for a commercial use.'
"See Hogin v. Cottingham, 533 So.2d 525, 528 (Ala.1988).
"The tort of invasion of privacy may occur both where there is a public and commercial use or publication and where there is a wrongful intrusion into one's private activities or solitude or seclusion. Hogin, 533 So.2d at 530, citing Norris, 272 Ala. at 176, 132 So.2d at 322-23. There are two standards the Court uses to find whether there has been a tort of invasion of privacy:
"`1) If there has not been public or commercial use or publication, then the proper standard is whether there has been an "intrusion upon the plaintiff's physical solitude or seclusion," or a "wrongful intrusion into one's private activities in such manner so as to outrage or to cause mental suffering, shame or humiliation to a person of ordinary sensibilities"; and 2) if there has been public or commercial use or publication of private information, then the proper standard is whether there has been "unwarranted publicity," "unwarranted appropriation or exploitation of one's personality," publication of private affairs not within the legitimate concern of the public, an intrusion into one's "physical solitude or seclusion," the placing of one in a "false but not necessarily defamatory position in the public eye," or an "appropriation of some element of [one's] personality for commercial use."'

"Hogin, 533 So.2d at 530-31 (citations omitted). (Emphasis added.) See also, Smith v. Doss, 251 Ala. 250, 37 So.2d 118 (1948)."
602 So.2d at 387.
Like Johnson, this case requires that we first determine the purpose for the investigation and whether "`[t]he thing into which there is intrusion or prying [is], and [is] entitled to be, private.'" Hogin, 533 So.2d at 531 (quoting W. Prosser & W. Keeton, The Law of Torts 855 (5th ed.1984)). In Alabama Electric Co-operative, Inc. v. Partridge, 284 Ala. 442, 445, 225 So.2d 848, 851 (1969), this Court noted, with approval, that plaintiffs making personal-injury claims "`must expect reasonable inquiry and investigation to be made of [their] claim[s] and [that] to this extent [their] interest in privacy is circumscribed.'"
The key issue in Jones's workers' compensation case was the extent of his injury. Jones, therefore, should have expected a reasonable investigation regarding his physical capacity. In fact, Jones testified that he was aware that APCo might investigate the validity of his workers' compensation claim and that the investigation might involve surveillance. We conclude that the purpose for the investigation was legitimate; thus, we must consider whether the means used in the investigation was offensive or objectionable. Johnson, 602 So.2d at 387.
Hand watched Jones and taped his activities while Jones was outside his home, in his front yard, where he was exposed to public view. Indeed, Jones's front yard was located at the intersection of two public roads. At no time did Hand enter or tape activities conducted inside Jones's own home. Because the activities Jones carried on in his front yard could have been observed by any passerby, we conclude *690 that any intrusion by ICU into Jones's privacy was not "wrongful" and, therefore, was not actionable.
The trial court should have granted ICU's motion for a JML on Jones's invasion-of-privacy claim. The judgment is reversed and a judgment is rendered for the defendant ICU.
REVERSED AND JUDGMENT RENDERED.
HOOPER, C.J., and MADDOX, HOUSTON, SEE, and LYONS, JJ., concur.
COOK, JOHNSTONE, and ENGLAND, JJ., dissent.
COOK, Justice (dissenting).
I respectfully dissent from the majority's holding that the intrusion by I.C.U. Investigations, Inc. ("ICU"), into Jones's privacy was not "wrongful" and, therefore, not actionable. Jones lives in a mobile home on 41 acres of land, his only neighbor living 250 yards away. ICU's employee, Hand, was told to videotape Jones doing activities, with the tape to be used as evidence against Jones at his workers' compensation trial. However, Hand videotaped Jones urinating in his front yard and submitted the tape to the lawyer for Alabama Power Company, Jones's employer. Clearly, a videotape of Jones urinating in his yard served no legitimate purpose in Jones's workers' compensation case. Although Jones was in his front yard, the matter was clearly personal in nature.
Although the evidence was undisputed that Jones was urinating in his front yard, I conclude that, given the distance from the highway, and the layout of his property, a disputed issue existed as to whether Jones's activities were public. In addition, a factual issue existed as to whether the means used to videotape Jones was improper, offensive, and unreasonable. The trial court and the jury reviewed the videotapes and went to the scene where the video was filmed. The trial court and the jury inspected the property and the area where Hand testified that he was positioned when he filmed the video. The jury could have determined that Hand was in fact not on public property when he videotaped Jones conducting an act that Jones intended to be private. Because a factual question existed as to whether the means used was unreasonable, offensive, or improper, the trial court properly submitted the claim to the jury. Apparently, after viewing the scene, the jury found the means used by ICU to be unreasonable, objectionable, and offensive. Therefore, I would affirm the judgment based on the jury verdict in favor of Jones and against ICU.
JOHNSTONE, J., concurs.
ENGLAND, Justice (dissenting).
The question before us is: Considering the evidence in a light most favorable to Jones, did Jones produce substantial evidence creating a factual dispute requiring resolution by the jury? I believe he did. Therefore, I respectfully dissent from the majority's decision to reverse the judgment for Jones and render a judgment for I.C.U. Investigations, Inc. ("ICU").
ICU argues that if the trial court had followed this Court's decision in Johnson v. Corporate Special Services, Inc., 602 So.2d 385 (Ala.1992), it would have concluded that ICU did not invade Mr. Jones's privacy. Specifically, ICU contends that if Johnson is controlling, then the trial court erred by failing to grant ICU's motion for a judgment as a matter of law. ICU contends that because it filmed Jones while Jones was in his front yard and was aware that he might be under surveillance by Alabama Power Company, his privacy was not invaded. In Johnson, an employee who had filed a workers' compensation claim was under surveillance by a company hired by his employer's workers' compensation carrier. 602 So.2d at 386. When the employee confronted the investigator, the investigator allegedly revealed a gun and drove *691 away from the surveillance scene. The employee sued the insurance carrier and the investigation company, alleging assault and battery and invasion of privacy. The trial court entered a summary judgment in favor of the insurance carrier and the investigation company on the invasion-of-privacy claim. This Court affirmed. Quoting Hogin v. Cottingham, 533 So.2d 525, 530-31 (Ala.1988), we stated that this Court had applied two standards for determining if a wrongful intrusion has occurred. The first of those standards reads as follows:
"If there has not been public or commercial use or publication, then the proper standard is whether there has been an `intrusion upon the plaintiff's physical solitude or seclusion,' or a `wrongful intrusion into one's private activities in such manner so as to outrage or to cause mental suffering, shame or humiliation to a person of ordinary sensibilities'...."
Johnson, 602 So.2d at 387.
We stated in Johnson that in determining whether an intrusion upon seclusion is actionable, the court must examine both the purpose for the intrusion and the means used. Johnson, 602 So.2d at 387. Because in Johnson the extent of the employee's injury was in dispute, the employee should have "expected a reasonable amount of investigation into his physical incapability." 602 So.2d at 388. Thus, this Court determined that the investigative purpose was legitimate. In examining the means used, this Court cited, with approval, Alabama Electric Co-operative, Inc. v. Partridge, 284 Ala. 442, 225 So.2d 848, 851 (1969), which had stated that a plaintiff claiming personal injury subjects himself to public observation and is "`not entitled to the same degree of privacy that he or she would enjoy within the confines of [his or] her home.'" 602 So.2d at 388 (quoting Partridge, 284 Ala. at 445, 225 So.2d at 851). In conclusion, this Court said:
"[The investigator] observed [the employee] while [the employee] was outside his home, in his front yard, where he was exposed to the public. At no time did [the investigator] intrude upon [the employee's] privacy inside [the employee's] own home. This Court finds that because [the employee's] activities in his front yard could have been observed by any passerby, [the investigation company's] intrusion into [the employee's] privacy was not `wrongful' and, therefore, was not actionable."
602 So.2d at 388
The holding in Johnson indicates that activity in a person's front yard, when that person is exposed to the public view, is not subject to protection for privacy reasons. By contrast, filming activity inside the home or even in the backyard can be an invasion of privacy. Although ICU filmed Jones urinating in his front yard,[3] Jones's act of urinating was a private act, one not usually exposed to the public gaze.
Since this Court decided Smith v. Doss, 251 Ala. 250, 37 So.2d 118 (1948), Alabama has recognized the invasion-of-privacy tort:
"It is generally accepted that the invasion of privacy tort consists of four distinct wrongs: 1) the intrusion upon the plaintiffs physical solitude or seclusion; 2) publicity which violates the ordinary decencies; 3) putting the plaintiff in a false, but not necessarily defamatory, position in the public eye; and 4) the appropriation of some element of the plaintiff's personality for a commercial use. Norris v. Moskin Stores, Inc., 272 Ala. 174, 132 So.2d 321 (1961), citing W. Prosser, Law of Torts, pp. 637-39 (2d ed.1955)."
Phillips v. Smalley Maintenance Servs., Inc., 435 So.2d 705, 708 (Ala.1983). In Phillips, this Court adopted the Restatement (Second) of Torts § 652B (1977) definition of invasion of privacy or intrusion into the plaintiffs solitude or seclusion. *692 435 So.2d at 708; Johnston v. Fuller, 706 So.2d 700, 702 (Ala.1997). Restatement § 652B states:
"One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person."
Comments a and b to § 652B state:
"a. The form of invasion of privacy covered by this Section does not depend upon any publicity given to the person whose interest is invaded or to his affairs. It consists solely of an intentional interference with his interest in solitude or seclusion, either as to his person or as to his private affairs or concerns, of a kind that would be highly offensive to a reasonable man.
"b. The invasion may be by physical intrusion into a place in which the plaintiff has secluded himself, as when the defendant forces his way into the plaintiff's room in a hotel or insists over the plaintiffs objection in entering his home. It may also be by the use of the defendant's senses, with or without mechanical aids, to oversee or overhear the plaintiffs private affairs, as by looking into his upstairs widow with binoculars or tapping his telephone wires. It may be by some other form of investigation or examination into his private concerns, as by opening his private and personal mail, searching his safe or his wallet, examining his private bank account, or compelling him by a forged court order to permit an inspection of his personal documents. The intrusion itself makes the defendant subject to liability, even though there is no publication or other use of any kind of the photograph or information outlined."
Thus, as we held in Johnson, an investigator filming, photographing, or looking into a person's home through the windows invades that person's privacy.
In the instant case, Kevin Hand testified that he did not film Jones inside his home, but in the front yard. Comments c and d to Restatement § 652B state:
"c. The defendant is subject to liability under the rule stated in this Section only when he has intruded into a private place, or has otherwise invaded a private seclusion that the plaintiff has thrown about his person or affairs. Thus there is no liability for the examination of a public record concerning the plaintiff, or of documents that the plaintiff is required to keep and make available for public inspection. Nor is there liability for observing him or even taking his photograph while he is walking on the public highway, since he is not then in seclusion, and his appearance is public and open to the public eye. Even in a public place, however, there may be some matters about the plaintiff, such as his underwear or lack of it, that are not exhibited to the public gaze; and there may still be invasion of privacy when there is intrusion upon these matters.

"[Illustrations omitted.]
"d. There is likewise no liability unless the interference with the plaintiff's seclusion is a substantial one, of a kind that would be highly offensive to the ordinary reasonable man, as the result of conduct to which the reasonable man would strongly object."
(Emphasis supplied.) Therefore, under certain circumstances, a person's privacy may be invaded even when he is in a public place. Illustration 7 to Restatement § 652B provides an example of the publicplace/private-matter exception.
"A, a young woman, attends a `Fun House,' a public place of amusement where various tricks are played upon visitors. While she is there a concealed jet of compressed air blows her skirts over her head, and reveals her underwear. B takes a photograph of her in that position. B has invaded A's privacy."
*693 Since the front yard, which is subject to the public gaze, is a public place for invasion-of-privacy purposes, the investigator was free to film Jones while he was in his front yard. However, despite the fact that Jones urinated in the front yard, ICU, through Hand, invaded Jones's privacy, because he filmed an act "not exhibited to the public gaze."
In light of the presumption of correctness attributed to jury verdicts, and our duty to consider the evidence on appeal in the light most favorable to Jones, see Delchamps, Inc. v. Bryant, 738 So.2d 824, 830-31 (Ala.1999), I cannot say that the verdict was "plainly and palpably wrong." This presumption of correctness should be further enhanced because the jury viewed the premises that were videotaped. Resolution of this issue could depend upon where in his front yard Jones was when he urinated and whether there were places in his front yard where he could stand and not be in public view or subject to the public gaze. Thus, by viewing the premises, the jury was in a better position to judge whether ICU had extended into areas "not exhibited to the public gaze." These are the kinds of circumstances where a personal view of the premises by the jury should enhance the presumption of correctness that attaches to a jury verdict. We have held that a trial court's findings are enhanced under the ore tenus rule when the trial court personally views the property in question. See Bell v. Jackson, 530 So.2d 42 (Ala.1988).
Jones presented substantial evidence indicating that ICU invaded Jones's privacy, and the evidence presented a factual dispute requiring resolution by the jury. Thus, the trial court correctly denied ICU's motion for a judgment as a matter of law or for a new trial or an order of remittitur. I would affirm the judgment of the trial court.

On Application for Rehearing
BROWN, Justice.
APPLICATION OVERRULED.
HOOPER, C.J., and MADDOX, HOUSTON, SEE, and LYONS, JJ., concur.
COOK, JOHNSTONE, and ENGLAND, JJ., dissent.
JOHNSTONE, Justice (dissenting).
I respectfully dissent. First, I concur in Justice Cook's dissent. Second, I observe that the issue of whether telephoto surveillance is offensive or improper enough to constitute invasion of privacy is a jury question. Hogin v. Cottingham, 533 So.2d 525 (Ala.1988); and Alabama Elec. Co-op., Inc. v. Partridge, 284 Ala. 442, 225 So.2d 848 (1969). Noteworthily, the name of the defendant-appellantICU Investigations, Inc.obviously intends a pun on "I see you" and implies prurient Peeping Tomism.
NOTES
[1] Hand's investigation log indicated 11 days of surveillance, but Hand testified at trial that he investigated Jones for 12 days.
[2] Jones testified at trial that he had seen a blue van parked at his neighbor's barn located off Highway 77; however, Jones said he did not know whether Hand was in the van.
[3] The record indicates that Jones's front porch and front yard could be seen by persons traveling on Highway 77 or on County Road 79.