[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-11976
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 14, 2012
JOHN LEY
CLERK

D.C. Docket No. 5:08-cv-00906-SLB

DALE SHEPARD,

Plaintiff-Appellant,

versus

UNITED PARCEL SERVICE, INC.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(March 14, 2012)

Before TJOFLAT, CARNES and WILSON, Circuit Judges.

PER CURIAM:

Dale Shepard is an African-American male suffering (since 1997) from chronic myeloid leukemia. He brought this action against his employer, United Parcel Service, Inc. ("UPS"), claiming disability discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112(a), race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2(a), and 42 U.S.C. § 1981, and invasion of privacy in violation of Alabama law.[1] Following discovery, the district court granted UPS summary judgment on all three claims. Shepard now appeals.

We address the court's disposition of the claims in the above order, and, concluding that Shepard failed as a matter of law to establish any of them, affirm the district court's judgment.[2]

I.

To establish a circumstantial *prima facie* case of discrimination under the ADA, the plaintiff must demonstrate that he (1) is disabled, (2) is a qualified individual, and (3) was subjected to unlawful discrimination because of his disability. *Greenberg v. BellSouth Telecommunications*, *Inc.*, 498 F.3d 1258,

---

[1] Shepard sought relief against UPS on other legal theories, but they are not at issue in this appeal.

[2] In assessing the correctness of the district court's grant of summary judgment, we take the evidence in the record in the light most favorable to Shepard, the non-moving party. *Greenberg v. BellSouth Telecommunications, Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007).

1263 (11th Cir. 2007); see also 42 U.S.C. § 12112(a) (stating that "no [employer] shall discriminate against a qualified individual with a disability because of the disability of such individual").[3] The plaintiff is disabled if he has "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) [is] regarded as having such an impairment." 42 U.S.C. § 12102(2). Major life activities include "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." *Greenberg*, 498 F.3d at 1264 (*quoting* 29 C.F.R. § 1630.2(i) (2007)).

EEOC regulations inform the courts that the following factors are relevant in determining whether an individual has a disability: "(i) The nature and severity of the impairment; (ii) The duration or expected duration of the impairment; and (iii) The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." *Garrett v. University of Alabama at Birmingham Bd. of Trs.*, 507 F.3d 1306, 1311 (11th Cir. 2007) (*quoting* 29 C.F.R.

_____

[3] The term "disability" is "interpreted strictly to create a demanding standard for qualifying as disabled." *See Carruthers v. BSA Advertising, Inc.*, 357 F.3d 1213, 1216 (11th Cir. 2004) (*quoting Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 197, 122 S.Ct. 681, 691, 151 L.Ed.2d 615 (2002)). The ADA Amendments Act, effective January 1, 2009. See Pub.L. No. 110–325, 122 Stat. 3553, expanded the definition of disability. *Id*. § 4. In this case, however, the district court did not apply the Act retroactively to Shepard's claims, and Shepard does not argue that the court's failure to apply the Act retroactively constituted error.

§ 1630.2(j)(2) (2007)).

A plaintiff claiming that he is substantially limited in the major life activity of "working" must establish that his condition "significantly restrict[s] [his] ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." *Pritchard v. Southern Co. Services*, 92 F.3d 1130, 1133 (11th Cir.1996). "An impairment does not substantially limit the ability to work merely because it prevents a person from performing either a particular specialized job or a narrow range of jobs. Nor does the inability to perform a single, particular job . . . constitute a substantial limitation in the major life activity of working." *Id.*1133 (quotations and citations omitted). The plaintiff must be precluded from more than one type of job, even if the job foreclosed is the plaintiff's job of choice. *Cash v. Smith*, 231 F.3d 1301, 1306 (11th Cir. 2000).

An employer's decision to place an employee on disability leave of absence is evidence of a record of impairment. *Pritchard*, 92 F.3d at 1134. Even so, the plaintiff still must demonstrate that his impairment substantially limited him in at least one major life activity to support a claim under the record-of-having-an impairment standard. *Collado v. United Parcel Service, Co.*, 419 F.3d 1143, 1157 (11th Cir. 2005); *see also Hillburn v. Murata Electronics North America, Inc.*, 181

4

F.3d 1220, 1229-30 (11th Cir. 1999).

Under the "regarded as having . . . an impairment" definition of disabled, an individual is considered "disabled" if his employer perceives him as having an ADA-qualifying disability. *See Carruthers v. BSA Advertising, Inc.*, 357 F.3d 1213, 1216 (11th Cir. 2004). That is, he "(1) has an impairment that does not substantially limit a major life activity, but is treated by an employer as though it does; (2) has an impairment that limits a major life activity only because of others' attitudes towards the impairment; or (3) has no impairment whatsoever, but is treated by an employer as having a disability as recognized by the ADA." *Hilburn*, 181 F.3d at 1230. "As with actual disabilities, a perceived impairment must be believed to substantially limit a major life activity of the individual." *Id.*

The second prong of a prima facie case requires that the plaintiff prove that he is a "qualified individual," i.e., someone with a disability who, "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8); *Holly v. Clairson Industries, L.L.C.*, 492 F.3d 1247, 1256 (11th Cir. 2007). "Accordingly, an ADA plaintiff must show either that he can perform the essential functions of his job without accommodation, or, failing that, . . . that he can perform the essential functions of his job with a reasonable accommodation." *Holly*, 492 F.3d

5

at 1256.[4]  "The use of the word 'reasonable' as an adjective for the word 'accommodate' connotes that an employer is not required to accommodate an employee in any manner in which that employee desires." *Stewart*, 117 F.3d at 1285.  "Stated plainly, under the ADA a qualified individual with a disability is not entitled to the accommodation of [his] choice, but only to a reasonable accommodation." *Id.* at 1286.  An employer is not required to provide accommodations that violate the employer's internal policies or a collective bargaining agreement.  *Davis v. Florida Power & Light Co.*, 205 F.3d 1301, 1307 (11th Cir. 2000); *Duckett v. Dunlop Tire Corp.*, 120 F.3d 1222, 1225 (11th Cir. 1997).  Furthermore, "an employer who goes beyond the demands of the law to help a disabled employee incurs no legal obligation to continue doing so." *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1257 n.3 (11th Cir. 2001).  Once a plaintiff establishes that he is a "qualified individual with a disability," the employer may show that the otherwise "reasonable accommodation" would impose an undue hardship on the employer. 42 U.S.C. § 12112(b)(5)(A).

The district court granted UPS summary judgment on Shepard's ADA claim on the ground that Shepard failed to "provide[ ] sufficient evidence to show that

---

[4] It goes without saying that an individual who is unable to perform an essential function of his job, even with an accommodation, is, by definition, not a "qualified individual."

he had a disability under the ADA in September 2006 [when UPS placed him on a medical leave of absence], that he was otherwise qualified to perform his job, or that he was denied a reasonable accommodation." Memorandum Opinion at 44. We agree.

Shepard claims that his medical condition substantially limited the major life activity of eating and sleeping, one of the bases of his ADA claim; yet, neither he nor his physician ever informed UPS of these limitations while he was on medical leave of absence. And he also failed to establish that his condition substantially limited the major life activity of working; he produced no evidence that he was precluded from a broad range or class of jobs, and instead, left the district court to speculate as to the impact his medical limitations had on his ability to work in other jobs.

Similarly, Shepard cannot demonstrate that he had a record of having an impairment based solely on his prior medical leaves of absence and testimony that it was common knowledge at UPS that he had leukemia, because he failed also to produce evidence that his impairment substantially limited him in a major life activity. Nor did he demonstrate that he was "regarded as disabled" by UPS. Although UPS placed him on a leave of absence after learning of his medical restrictions and recommended that he apply for short-term disability benefits, the

evidence failed to show that UPS perceived him as having a disability that substantially limited him in a major life activity.

Assuming, though, that Shepard created a genuine issue of material fact as to his asserted ADA disability, he nonetheless failed to demonstrate that he was a "qualified individual" for he did not show that he was able to perform the essential job functions of any available union position at UPS, with or without reasonable accommodation. His request to move back to an administrative position in the office would have required UPS to violate its internal policy against assigning tasks to union employees that were not covered by the collective bargaining agreement. With respect to available union positions at UPS, Shepard admitted that the 70-pound lifting requirement was an essential job function of all union jobs at the company's Roebuck center, and he failed to show that he was either released from this restriction or that a reasonable accommodation was available to permit him to satisfy this requirement. The fact that UPS ultimately accommodated Shepard by eliminating or modifying this job function, which it reasonably deemed essential, was not sufficient to make out a case for the jury.

## II.

Title VII makes it unlawful for an employer to discriminate against an employee "with respect to his compensation, terms, conditions, or privileges of

employment, because of [his] race." 42 U.S.C. § 2000e-2(a)(1).  Shepard claims

that UPS, in making its employment decisions with respect to him, discriminated

against him on account of his race.  Where, as here, the employee is unable to

prove discrimination via direct evidence, he must prove discrimination

circumstantially.  In such a case, we generally evaluate the claim of discrimination

under the framework established by *McDonnell Douglas Corp. v. Green*, 411 U.S.

792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and *Texas Dep't. of Community*

*Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).  *Alvarez*

*v. Royal Atlantic Developers, Inc.*, 610 F.3d 1253, 1264 (11th Cir. 2010).  We use

the same frame work in evaluating the claim when, as here, brought under 42

U.S.C. § 1981 as well as Title VII.  *Ferrill v. Parker Group, Inc*., 168 F.3d 468,

472 (11th Cir. 1999).

Under the *McDonnell Douglas* framework, the plaintiff may establish a

prima facie case of discrimination by showing "that [he] was a qualified member

of a protected class and was subjected to an adverse employment action in contrast

to similarly situated employees outside the protected class." *Id.*  To prove an

adverse employment action under Title VII's anti-discrimination clause, an

employee must show "a serious and material change in the terms, conditions, or

privileges of employment." *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232,

1239 (11th Cir. 2001) (emphasis omitted). An adverse employment action is a "significant change in employment status such as hiring, firing, failing to promote, reassignment with significantly different responsibilities or a decision causing a significant change in benefits." *Webb-Edwards v. Orange County Sheriff's Office*, 525 F.3d 1013, 1031 (11th Cir. 2008) (*quoting Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998)). An involuntary transfer to a different position may be an adverse employment action if it "involves a reduction in pay, prestige, or responsibility." *Hinson v. Clinch County, Ga. Bd. of Educ.*, 231 F.3d 821, 829 (11th Cir. 2000). It is not enough that a transfer imposes some *de minimis* inconvenience or alteration of responsibilities, however, because all transfers generally require an employee to engage in some learning, work with new people, and accept new responsibilities. *Id.* at 1453.

The district court concluded that Shepard failed to present evidence sufficient to establish a prima facie case of discrimination in violation of Title VII. Memorandum Opinion at 48. We agree.

First, Shepard failed to show that he suffered an adverse employment action. He presented no evidence that UPS's decision-makers were aware of his medical limitations at the time he was moved from the office to the warehouse. Without

10

considering his later medical restrictions, UPS's decision to move him from the office to the warehouse was a lateral transfer that did not involve a serious and material change in the terms, conditions, and benefits of his employment. The responsibilities of his new position were defined in the collective bargaining agreement and did not result in any change to his compensation, hours of work, or benefits. To the extent that he claimed that UPS's decision to place him on medical leave of absence constituted an adverse employment action, the decision was a reasonable response to his medical restrictions and not an adverse employment action.

Second, Shepard failed to establish that UPS treated another similarly-situated employee outside of his protected class more favorably. And, finally, he failed to show that, as a union employee, he was qualified for the office position from which he was transferred.

### III.

Under Alabama law, the tort of invasion of the right of privacy, sometimes referred to as the tort of outrage, includes, in relevant part, the wrongful intrusion into a plaintiff's "private concerns" or "emotional sanctum." *Phillips v. Smalley Maintenance Serv., Inc.*, 435 So.2d 705, 711 (Ala. 1983). The intrusion must be offensive or objectionable to a reasonable person. *Hogin v. Cottingham*, 533

So.2d 525, 531 (Ala. 1988).  A wrongful intrusion may be found where the means of gathering the information are excessively objectionable and improper.  *Id.* at 532.

The district court found nothing in the evidence that could constitute the tort at issue.  All that Shepard cited to establish the tort was an encounter with Gary Jones, the Roebuck center's manager.  Jones asked him about his "salvation" and, according to Shepard, this amounted to outrage.  In the district court's view, however,

> [n]o reasonable jury could find that Jones's asking Shepard about his salvation on one occasion amounts to an outrage claim.  The court need[ed] only examine the . . . element of the claim, that requires the conduct to be extreme and outrageous, to find that the claim fails.  Extreme and outrageous conduct is "conduct so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *Thomas* [*v. BSE Indus. Contractors, Inc.*, 624 So.2d 1041, 1044 (Ala. 1993)].  Nothing about the single question asked by Jones reaches such a high standard of offensiveness so as to be "utterly intolerable." *Id.*  Cases that have presented actionable outrage have involved much more egregious and disturbing conduct.

Memorandum Opinion at 51-52.  We agree with the district court that Shepard's claim failed as a matter of law.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.

12