[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOV. 1, 2000
THOMAS K. KAHN
CLERK

_____

No. 99-12797

_____

D. C. Docket No. 98-01367-VC-P-S

BRENDA CASH,

Plaintiff-Appellant,

versus

SYLVIA SMITH,
ALABAMA POWER COMPANY,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

**(November 1, 2000)**

Before EDMONDSON and BIRCH, Circuit Judges, and SHAPIRO*, District
Judge.

_____

*Honorable Norma L. Shapiro, U.S. District Judge for the Eastern District of Pennsylvania,
sitting by designation.

BIRCH, Circuit Judge:

This appeal requires us to determine whether the plaintiff, Brenda Cash, had a medical condition that qualifies as a disability under the Americans with Disabilities Act. The district court, finding that Cash's physical impairments did not rise to the level of a disability under the ADA, granted defendant Alabama Power Company's motion for summary judgment. We AFFIRM.

## I. BACKGROUND

Brenda Cash began her association with the Alabama Power Company ("APCO") in 1986, working as an outside contractor who provided typesetting support for the graphics department in APCO's in-house print shop. In 1989, she accepted full-time employment in the print shop, where she continued to do typesetting work for the next four years. In 1993, Cash's duties broadened to include providing administrative support within the print shop, such as handling the billing records and employee time sheets. In 1996, the print shop purchased a computerized tracking system called the "PSI," which was intended to monitor the progress of the shop's orders and automate its billing system. Cash, while still performing her administrative duties, was assigned the responsibility of implementing the new system. To this point in her career at the print shop, Cash

had always received positive performance reviews from her supervisor, Marvin Fritz.

Cash had suffered from various medical problems for years, including diagnoses of mitral valve prolapse, migraine headaches, depression, high blood pressure, and the removal of a brain tumor, but there is no evidence that these conditions had any adverse effects on Cash's work performance. In 1997, however, Cash was diagnosed with a seizure disorder in August and adult-onset diabetes in October. These developments roughly coincided with Marvin Fritz retiring and Sylvia Smith replacing him as manager of the print shop in September. Cash claims that she told Smith of her diabetes diagnosis in confidence, and that Smith violated that confidence by telling other print shop employees the nature of her illness.

Cash began missing work with increased frequency after she was diagnosed with the seizure disorder and diabetes. By the end of 1997, she had completely exhausted all of her paid sick leave and vacation time for the year, but Smith permitted Cash to take unpaid leave whenever she requested it. Cash was entitled to a new allotment of vacation time in January 1998, and was frequently absent from work in the early part of that year for both medical and other personal reasons. In response to Cash's absenteeism, Smith contacted APCO's disability

3

management department to find out what was the appropriate course of action. Smith was told to have Cash complete APCO's standard Family and Medical Leave Act paperwork in order to discover the seriousness of Cash's illnesses and determine whether she qualified for disability or FMLA leave. After examining and speaking with Cash, Dr. Beaty, her personal physician, filled out the FMLA forms and indicated that Cash was not disabled and did not require FMLA leave.

From the time she took over as manager in September 1997, Smith had viewed the implementation of the PSI as one of the print shop's main priorities, and to that end relieved Cash of her administrative duties so that she could focus exclusively on getting the PSI up and running. Smith set a target date of January 1998 for Cash to have the PSI fully implemented, which meant having the software installed to the print shop's specifications and the employees trained in its use. The PSI software was installed on time, but Smith was not satisfied that it was tailored to meet the print shop's specific needs, and the employees were not adequately trained in its use. As of the time Cash filed her lawsuit, the PSI was still not operational.

In January 1998, a typesetter in the print shop resigned from her job, and Cash volunteered to assume typesetting duties to compensate for the vacancy until the spot was filled. Rather than hire another typesetter, however, Smith

permanently reassigned Cash to typesetting duties. Smith then created and posted a new position, called "print specialist." The primary responsibility of the print specialist was to be the implementation and management of the operations of the PSI, but the position also encompassed other duties, such as handling vendor relationships and providing customer support. Twelve people, including Cash, applied for the print specialist job in April 1998. A hiring committee interviewed the twelve applicants and asked four of them to return for a second interview, but Cash was not one of them. The committee eventually hired Mary Guarino for the position, a woman whom seven of the eight members of the committee had agreed was the most qualified applicant.

Cash continued to perform typesetting duties in the print shop after she was not hired for the print specialist job, but she soon began applying for other positions within APCO. In May 1998, she was given a new job in a new department as a client service representative, for which she received a pay raise. After transferring to her new job, Cash had to be hospitalized for depression in late July 1998, and did not return to work until September. In late September, however, she again underwent in-patient treatment for depression.

On 28 May 1998, Cash brought this lawsuit, alleging violations of the Americans with Disabilities Act, the Rehabilitation Act, and the Family and

Medical Leave Act, as well as asserting state law claims for invasion of privacy and interference with business relations. Smith and APCO filed a motion for summary judgment on all counts of Cash's complaint, which the district court granted.[1]

## II.  DISCUSSION

We review the decision of a district court to grant a summary judgment <u>de novo</u>, applying the same legal standards that were applicable in the trial court. <u>See Hilburn v. Murata Elecs. N. America, Inc.</u>, 181 F.3d 1220, 1225 (11th Cir. 1999). "Summary judgment is proper if the pleadings, depositions, and affidavits show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." <u>Pritchard v. Southern Co. Servs.</u>, 92 F.3d 1130, 1132 (11th Cir. 1996). While we apply a <u>de novo</u> standard of review to the district court's legal conclusions, we must resolve any factual questions with all reasonable inferences being drawn in favor of the non-movant. <u>See Hilburn</u>, 181 F.3d at 1225.

**A.     <u>Discrimination under the Americans with Disabilities Act and</u>**

      **<u>Rehabilitation Act</u>**

---

[1]Cash does not appeal the district court's granting of APCO's motion for summary judgment as to her interference with business relations claim.

The basis of Cash's primary ADA and Rehabilitation Act claims is that Smith discriminated against her based on her medical conditions when she both removed Cash from the task of implementing the PSI and subsequently failed to hire her for the print specialist position. In order to establish a prima facie case of discrimination under the ADA, Cash must demonstrate that she (1) is disabled, (2) is a qualified individual, and (3) was subjected to unlawful discrimination because of her disability. See 42 U.S.C. § 12112(a); Gordon v. E.L. Hamm & Assocs., Inc., 100 F.3d 907, 910 (11th Cir. 1996). Discrimination claims under the Rehabilitation Act are governed by the same standards used in ADA cases, see 29 U.S.C. § 794(d), and therefore we will discuss these two claims together.[2]

Our initial inquiry is whether Cash's various medical problems rose to the level of a disability. The ADA and the regulations interpreting the Rehabilitation Act both define "disability"[3] as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2); see 34 C.F.R. § 104.3(j)(1). Cash did not

[2]Cases decided under the Rehabilitation Act are precedent for cases under the ADA, and vice-versa. See Pritchard, 92 F.3d at 1132 n.2.

[3]The regulations construing the Rehabilitation Act, which was passed in 1973, actually use the term "handicap" rather than the ADA term "disability." In the context of this case, however, it is clear that the terms can be used interchangeably, and so we will use the term "disability" in describing the standards under both statutes.

7

clearly articulate which of the three statutory definitions of disability she was proceeding under, so we will examine each in turn.

It is not disputed that Cash suffers from a number of medical conditions that could each be regarded as impairments. The question, however, is whether these impairments substantially limit one or more major life activities. We are guided on this issue by the regulations promulgated by the Equal Employment Opportunity Commission, which state that "[m]ajor [l]ife [a]ctivities means functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i).

Cash has exhaustively chronicled her many health problems and enumerated their symptoms, but she has failed to specify a major life activity that she is substantially limited in, nor has she provided any evidence of such a limitation. Cash's seizure disorder results in her experiencing "focal" seizures, which can last anywhere from a few seconds to several minutes and result in her feeling numb on the left side of her body. Cash is briefly incapacitated during the short period when she is experiencing a seizure, but she can resume her normal activity after it passes. The seizures occur mainly at night, and Cash testified to having experienced only one seizure at work during 1997. Cash's seizure disorder is a

chronic one, but since her diagnosis in August 1997, it has largely been controlled by medication.[4]

In short, Cash has established that she occasionally suffers from focal seizures, but she has not shown that these seizures have limited any of her major life activities. The same is true of her diabetes, migraines, and depression;[5] while they certainly have had an adverse impact on Cash's life, there is no evidence that they have limited her in a major life activity. The most telling evidence on this point is Cash's own deposition testimony, in which she stated that despite all of her ailments, she considers herself an active person who walks, swims, fishes, and had held a 40-hour-a-week job for the previous eight years. Thus, we cannot say that Cash has shown that she was substantially limited in any major life activity at the time of the employment actions complained of, as required by 42 U.S.C. § 12102(2)(A). Nor can we say that Cash adduced evidence of a "record of such impairment" under 42 U.S.C. § 12102(2)(B).

---

[4]The Supreme Court has made it clear that the determination whether an individual is disabled for ADA purposes is to be made with reference to measures that mitigate the impairment. See Sutton v. United Air Lines, Inc., 527 U.S. 471, 475, 119 S. Ct. 2139, 2143 (1999).

[5]The fact that Cash was eventually hospitalized for depression in July and September of 1998 is irrelevant to this case. The employment action that Cash is complaining of occurred in late April and early May of 1998, and we evaluate her disability as manifested at that time. See Browning v. Liberty Mut. Ins. Co., 178 F.3d 1043, 1047 (8th Cir. 1999); cf. Hilburn, 181 F.3d at 1230 (employer had to know of disability at time of adverse action in order to discriminate).

9

The final question under the ADA and Rehabilitation Act, then, is whether Cash presented evidence that APCO "regarded" her as having an impairment that substantially limited a major life activity under 42 U.S.C. § 12102(2)(C). The only evidence in the record bearing upon this point is a document indicating that APCO prohibited Cash from driving a company vehicle once it became aware of the extent of her medical problems.[6] Cash's briefing does not argue that driving a company vehicle is itself a major life activity; rather, we construe her argument to be that APCO regarded her as substantially limited in the major life activity of working.[7]

In order for Cash to establish that APCO regarded her as substantially limited in her ability to work, she must prove that APCO considered her as "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having

_____

[6]This is not evidence that Cash actually was substantially limited in her ability to drive automobiles. The deposition testimony of her personal physician indicated that, given the localized nature of her seizures, Cash's seizure disorder does not necessarily limit her ability to drive. Further, Cash has not presented any evidence that she is unable to drive her personal automobile.

[7]We note that the Supreme Court has expressed having "conceptual difficulty in defining 'major life activities' to include work, for it seems 'to argue in a circle to say that if one is excluded ... by reason of [an impairment from working with others] ... then that exclusion constitutes an impairment, when the question you're asking is, whether the exclusion itself is by reason of handicap.'" Sutton, 527 U.S. at 492, 119 S. Ct. at 2151. This circuit, however, has entertained such arguments in the past, and we do not reconsider the question here. See, e.g., Gordon, 100 F.3d at 911-12.

10

comparable training, skills, and abilities." 29 C.F.R. § 1630.2(j)(3)(i); see

Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1327 (11th Cir. 1998). To be

substantially limited in the major life activity of working, an individual must be

precluded from more than one type of job, even if the job foreclosed is the

individual's job of choice. See Sutton, 527 U.S. at 492. If jobs utilizing an

individual's skills are available, that individual is not considered substantially

limited in her ability to work. See id.

Under the ADA and Rehabilitation Act standards just discussed, we reject

Cash's argument that APCO regarded her as substantially limited in the major life

activity of working only because it would not permit her to drive a company car.

Cash makes the conclusory allegation that not being able to drive a company car

disqualifies her from a large segment of the labor market, but she fails to identify

the broad range of jobs foreclosed. Not only were jobs utilizing Cash's skills

available, but APCO was in fact employing Cash in such a job at the time of the

actions complained of, and it continued to do so. Further, there is no evidence that

APCO viewed her restriction on driving a company car as limiting her in the

performance of her duties in any way. Cash has failed to present any evidence that

APCO regarded her as substantially limited in the major life activity of working.

11

Cash did not present any evidence that she suffered from a disability as that term is defined by the ADA and the Rehabilitation Act. She has therefore failed to establish a prima facie case under these statutes, and the district court was correct in granting APCO's motion for summary judgment on these counts.

## B. Discrimination under the Family and Medical Leave Act

Cash alleges that she was removed from working on the PSI and was not given the print specialist position in retaliation for taking time off from work for medical reasons. In order to establish a prima facie case under the FMLA, Cash must show that "(1) she availed herself of a protected right; (2) she suffered an adverse employment decision; and (3) there is a causal connection between the protected activity and the adverse employment decision." See Earl v. Mervyns, Inc., 207 F.3d 1361, 1367 (11th Cir. 2000) (per curiam).

The FMLA provides that employees may take up to twelve weeks of unpaid leave for, among other things, "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). Given the standard, it logically follows that not all leave requested or taken for medical reasons qualifies for the FMLA's protections. For this reason,

12

employers have a statutory right to require an employee requesting FMLA leave to obtain certification that attests to the employee's eligibility for such leave from a health care provider. See 29 U.S.C. § 2613(a).

In this case, Cash has failed to present evidence that she exercised a protected right under the FMLA. APCO requested that Cash have her doctor complete the company's standard FMLA certification form, and Cash's personal physician indicated on the form that Cash did not qualify for FMLA leave because her conditions were being controlled by medication, and she was able to perform the functions of her position. Cash did not provide APCO with certification that her medical conditions met the statutory standard, and therefore the medical leave that she did take was not under the auspices of the FMLA. The district court correctly granted APCO's motion for summary judgment on the FMLA count.

## C. "Unlawful Disclosure" under the ADA, Rehabilitation Act, and FMLA

Cash claims that Smith violated nondisclosure provisions of the ADA, Rehabilitation Act, and FMLA when she told other print shop employees that Cash had diabetes. Smith argues that 42 U.S.C. § 12112(d) and 29 C.F.R. § 1630.14(c) create a private cause of action for such a disclosure. We need not decide whether the sections Cash refers us to do in fact create a cause of action, because, on their face, they do not apply to the facts of this case. The statute enumerates the

situations in which an employer may require an employee to submit to a medical examination, see 42 U.S.C. § 12112(d), and the regulation states that the results of any such examination shall be considered confidential, see 29 C.F.R. § 1630.14(c)(1).  In this case, the disclosure that Cash complains of was not of the result of an examination ordered by APCO, but of a voluntary disclosure that Cash made to Smith.  The statute and regulation cited by Cash do not govern voluntary disclosures initiated by the employee, and therefore the district court correctly granted APCO's motion for summary judgment on this count.

## D.  Invasion of Privacy

Cash argues that Smith's disclosure of her diabetes diagnosis to the print shop employees was an actionable invasion of privacy under Alabama law.  In Alabama, it is settled that the tort of invasion of privacy consists of four distinct wrongs:

> (1) intruding into the plaintiff's physical solitude or seclusion; (2) giving publicity to private information about the plaintiff that violates ordinary decency; (3) putting the plaintiff in a false, but not necessarily defamatory, position in the public eye; or (4) appropriating some element of the plaintiff's personality for a commercial use.

Johnston v. Fuller, 706 So.2d 700, 701 (Ala. 1997).  The only form of the tort that could possibly apply to Cash's complaint is the second, "giving publicity to private information."

14

An important corollary to the invasion of privacy tort is that a plaintiff cannot claim a right of privacy in publicly known information.  See Johnston, 706 So.2d at 703 n.2; Abernathy v. Thornton, 83 So.2d 235, 237 (Ala. 1955).  Cash's deposition testimony, however, establishes that she did not treat her diabetes condition as a private matter herself.  It is undisputed that Cash freely discussed her illness with other print shop employees, and, therefore, she cannot claim that Smith's disclosure of this information invaded her privacy.  The district court correctly granted APCO's motion for summary judgment on this count.

### III.  CONCLUSION

Cash appealed the district court's granting of APCO's motion for summary judgment on her ADA, Rehabilitation Act, FMLA, and state tort claims, arguing that the district court had failed to properly credit the evidence she presented.  As we have explained, Cash failed to make a prima facie showing on any of the counts in her complaint, and the district court was correct in granting APCO's motion for summary judgment.  Accordingly, the summary judgment granted by the district court is AFFIRMED.