975 So.2d 984 (2007)
Harvey MARTIN and David Whitten
v.
Robert PATTERSON, individually, and d/b/a Patterson Construction.
No. 2050781.
Court of Civil Appeals of Alabama.
June 8, 2007.
*987 Chris Van Petter, Pelham, for appellants.
Submitted on appellant's brief only.
THOMAS, Judge.
Robert Patterson, individually, and doing business as Patterson Construction, sued Harvey Martin and David Whitten in April 2005, alleging that Martin and Whitten had intentionally caused him emotional distress and seeking damages. Patterson also filed a motion for a temporary restraining order prohibiting Martin and Whitten from committing certain types of conduct to harass Patterson; the trial court granted that motion. Patterson later amended his complaint to also allege that Martin and Whitten had invaded his privacy. After several ore tenus proceedings, the trial court entered a judgment holding that no intentional infliction of emotion distress had occurred, that Martin and Whitten were liable for the invasion of Patterson's privacy, and making the restraining order permanent. The trial court also awarded Patterson $10 in damages for Martin and Whitten's invasion of his privacy. Martin and Whitten filed a postjudgment motion that was denied by operation of law; they then timely appealed to this court. We affirm in part and reverse in part.

*988 Factual Background

Although the allegations Patterson made at trial were related to specific instances of conduct on the part of Martin and Whitten, it appears that the parties had previously developed their animosity toward each other. In approximately 2000 Martin formed a nonprofit organization named the "Attalla Coalition." According to Martin, the purpose of the Attalla Coalition was to keep the residents of the City of Attalla informed of the city's actions and to represent the residents' interests. Martin served on the Attalla City Council at the time of the trial. During a recent election Martin ran for the office of mayor of Attalla and Whitten ran for a position on the Attalla City Council; both lost those elections. At some point before the trial court's proceedings, Martin had requested from the City of Attalla information relating to the bid process by which Patterson had been awarded contracts with the City of Attalla. It was following those requests that Patterson brought his action against Martin and Whitten.
The trial court granted Patterson's request for a temporary restraining order on April 15, 2005, prohibiting Martin and Whitten from "contacting, following, threatening, intimidating, harassing in any manner, or being within 500 feet of the plaintiff." In May 2005, the trial court conducted a hearing to determine whether to continue the temporary restraining order or enter a preliminary injunction.
During that hearing Shane Jenkins, a process server employed by Patterson's attorney, testified that upon delivery of the complaint and temporary restraining order to Martin and Whitten he had observed Whitten make several statements about Patterson  including that if Patterson "doesn't watch what he does he is going to end up just like his brother." Jenkins testified that he understood Whitten to be alluding to a brother of Patterson's who had been killed years earlier after being stabbed in the throat.
According to Patterson's May 2005 testimony, Martin had driven his van on multiple occasions past locations where Patterson and his employees were working on construction projects for  and in  the City of Attalla. Patterson testified that when Martin drove by he would yell from his open window at Patterson and his work crew, honk the horn of his vehicle, laugh, and point at a video camera that was mounted on his dashboard. Specifically, Patterson alleged that Martin would yell "O'Rear," at him or his crew; "O'Rear" was the last name of the mayor of the City of Attalla at that time.[1] Patterson stated that Martin's conduct disrupted both his and his employees' ability to concentrate on the proper pouring of concrete during their construction projects. Martin's and Whitten's conduct was particularly stressful to Patterson, he testified, because of the demanding task of his particular concrete construction projects. Patterson added that many of his projects were conducted on busy highways, and he indicated that the added stress caused by Martin's conduct put both himself and his employees in greater danger from passing traffic. Several employees of Patterson's also testified that the work crew's ability to perform their jobs was disrupted because of Martin's conduct. One employee stated that Patterson typically became angry and difficult to work for because of Martin's conduct.
*989 The trial court continued the May 2005 hearing to a later date to afford Martin and Whitten an opportunity to refute the evidence adduced by Patterson with their own witnesses. Following the May 2005 hearing, the trial court ordered that the temporary restraining order of April 15, 2005, continue in force, but it subsequently removed Whitten from the restrictions of that order.
In October 2005, the trial court conducted a second ore tenus proceeding, during which Martin and Whitten testified and contradicted Patterson's allegations, specifically denying that they had engaged in the conduct Patterson had alleged. Other witnesses for Martin and Whitten provided alibis for the two men.
Following the October 2005 proceeding, the trial court entered a judgment stating, in relevant part:
"This cause came on for trial on [Patterson's] complaints for Intentional Infliction of Emotional Distress, Invasion of Privacy and for Temporary/Permanent Restraining Order and on [Martin and Whitten's] Motion to Vacate/Dissolve Court's previous Order granting temporary relief. After consideration of the evidence, the Court finds as follows:
"1. [Patterson] presented evidence, if believed [that] would entitle him to the relief requested and for a permanent restraining order. The testimony offered by [Martin and Whitten] if believed would require a finding that [Patterson's] complaints are not proven by substantial evidence.
"2. The Court based on the foregoing finds against [Patterson] and in favor of [Martin and Whitten] on the issue of Intentional Infliction of Emotional Distress and in favor of [Patterson] and against [Martin and Whitten] on the issue of Invasion of Privacy and assesses [Patterson's] damages at $10 and costs.
"3. The Court's Restraining order of April 15, 2005 is hereby made permanent and any bond money posted is ordered refunded."[2]
Martin and Whitten filed a motion for a new trial or, in the alternative, a `motion to reconsider,' alleging that the trial court had erred in determining that they had invaded Patterson's privacy had occurred and in not providing proper notice that it would conduct a hearing on the merits of a permanent injunction. Martin and Whitten's postjudgment motion was denied by operation of law; they then timely appealed to this court.

Discussion
Martin and Whitten present three arguments for our consideration: (1) that no evidence was presented as to Whitten's conduct that would indicate that a preliminary injunction should be imposed upon him; (2) that both Martin and Whitten are entitled to a new trial on the merits on the issue of invasion of privacy; and (3) that both Martin and Whitten are entitled to a new trial on the merits on Patterson's claim seeking injunctive relief because the parties had not agreed to consolidate the hearings on the preliminary injunction with a hearing on the merits of a permanent injunction.

*990 The Injunction

For ease of analysis, we address Martin and Whitten's arguments regarding the injunction together. Martin and Whitten first argue that Patterson did not meet the requirements necessary for a preliminary injunction against Whitten; however, the trial court entered a permanent injunction. The trial court's judgment states that the matter that was tried included Patterson's request for a "Temporary/Permanent Restraining Order," and the court specified in its judgment that it was making permanent the previously entered restraining order. Our supreme court explained the difference between a preliminary injunction and a permanent injunction as follows:
"To be entitled to a permanent injunction, a plaintiff must demonstrate success on the merits, a substantial threat of irreparable injury if the injunction is not granted, that the threatened injury to the plaintiff outweighs the harm the injunction may cause the defendant, and that granting the injunction will not disserve the public interest. Clark Constr. Co. v. Pena, 930 F.Supp. 1470 (M.D.Ala. 1996). The elements required for a preliminary injunction and the elements required for a permanent injunction are substantially similar, except that the movant must prevail on the merits in order to obtain a permanent injunction, while the movant need only show a likelihood of success on the merits in order to obtain a preliminary injunction. Pryor v. Reno, 998 F.Supp. 1317 (M.D.Ala.1998) [overruled on other grounds by Pryor v. Reno, 171 F.3d 1281 (11th Cir.1999)]. The purpose of a preliminary injunction is to preserve the status quo until a full trial on the merits can finally determine the contest. [University of Texas v.] Camenisch, 451 U.S. [390,] 395, 101 S.Ct. 1830[, 1834 (1981)]."
TFT, Inc. v. Warning Sys., Inc., 751 So.2d 1238, 1242 (Ala.1999). The standard of review applicable to each type of injunction is also different. "A preliminary injunction is reviewed under an abuse-of-discretion standard, whereas a permanent injunction is reviewed de novo." TFT, 751 So.2d at 1241 (citing Smith v. Madison County Comm'n, 658 So.2d 422, 423 n. 1 (Ala. 1995)).
Martin and Whitten argue that a preliminary injunction was wrongly entered against Whitten and cite only to cases that pertain to the grant of a preliminary injunction to support their argument. Thus, the arguments made by Martin and Whitten regarding the propriety of entering a preliminary injunction are inapposite to the issue whether the trial court should have granted a permanent injunction.[3] "`[I]t is not the function of [a] Court to do a party's legal research or to make and address legal arguments for a party based on undelineated general propositions not supported by sufficient authority or argument.'" Butler v. Town of Argo, 871 So.2d 1, 20 (Ala.2003) (quoting Dykes v. Lane Trucking, Inc., 652 So.2d 248, 251 (Ala. 1994)); see also Rule 28(a)(10), Ala. R.App. P. Consequently we will not further address this issue.
Martin and Whitten's second argument regarding the injunction is that they did not receive proper notice that a hearing on the merits of a permanent injunction would be held, as opposed to a hearing on the *991 propriety of a preliminary injunction. The primary case Martin and Whitten rely upon for this argument is Woodward v. Roberson, 789 So.2d 853 (Ala.2001). In Woodward, our supreme court noted:
"It is appropriate for the trial court, either before or after the commencement of the hearing on an application for a preliminary injunction, to order that the trial of the action on the merits be consolidated with that hearing. Rule 65(a)(2), Ala. R. Civ. P. However, such a consolidation must conform to the rights of the litigants to reasonable notice. Pughsley v. 3750 Lake Shore Drive Coop. Bldg., 463 F.2d 1055 (7th Cir.(Ill.)1972) (per then Circuit Judge John Paul Stevens)."
Woodward, 789 So.2d at 855. Pughsley v. 3750 Lake Shore Drive Coop. Bldg., 463 F.2d 1055 (7th Cir.1972), which is cited in Woodward, also stated that "the parties should be given a clear opportunity to object, or to suggest special procedures, if a consolidation is to be ordered." 463 F.2d at 1057.
In determining that the trial court had entered a preliminary injunction and not a permanent injunction in Woodward, our supreme court distinguished the facts in that case from those in TFT by observing that "the parties in TFT agreed to the consolidation of the hearing on the preliminary-injunction request with a hearing on the merits." 789 So.2d at 855 (citing TFT, 751 So.2d at 1241-42). In regard to that agreement our supreme court noted in TFT that "the trial court asked the parties during the hearing, `Are we going to combine this hearing with any subsequent hearing, for the record?' and to that question counsel for each of the parties responded, `Yes, sir.'" 751 So.2d at 1242. Although at the conclusion of the second hearing in this case the parties agreed to "submit it" for the trial court's consideration, such an agreement is not similar to the agreement in TFT. In fact, the agreement to submit the issue for the trial court's determination in this case is similar to dialogue between the trial court and the attorneys in Pughsley, supra. In that case the trial court stated:
"`Now I am going to insist, counsel, that whatever your total case is, and I want to give you every reasonable opportunity to put it in, that you complete it before I request the defendants to go ahead.
"`Now, can you produce your witness tomorrow. . . .'" 463 F.2d at 1056. In determining that the trial court's statement in Pughsley did not meet the notice requirement under Rule 65(a)(2),[4] Fed.R.Civ.P., the United States Court of Appeals for the Seventh Circuit stated that the "[p]laintiffs' counsel could reasonably have understood the judge as merely requiring a presentation on the following day of the remainder of plaintiffs' `total case' in support of their pending motion. That was the only hearing then in progress." Id. at 1057. Similarly, within the context of the overall trial-court proceedings in this case, it is apparent that the parties intended to submit the question whether the preliminary injunction should be entered for the trial court's consideration  they did not agree to submit the question whether a permanent injunction should be entered. However, our analysis does not end with that determination, because:
"A party contesting the entry of final judgment at the preliminary injunction stage, however, must demonstrate prejudice as well as surprise. The action may be remanded to the trial court for a determination of whether prejudice has resulted. On the other hand, if it is clear that consolidation did not detrimentally *992 affect the litigants, as, for example, when the parties in fact presented their entire cases and no evidence of significance would be forthcoming at trial, then the trial court's consolidation will not be considered to have been improper."
11A Charles Allan Wright[, Arthur R. Miller & Mary Kay Kane] et al., Federal Practice and Procedure: Civil § 2950 (2d ed.1995) (footnotes omitted); see also Rule 45, Ala. R.App. P. (providing that "[n]o judgment may be reversed or set aside, nor new trial granted in any . . . case . . . for error as to any matter of . . . procedure, unless . . . after an examination of the entire cause, it should appear that the error complained of has probably injuriously affected substantial rights of the parties"). In this case Martin and Whitten have not demonstrated that they were prejudiced by the trial court's consolidation of the hearing on the preliminary injunction with a hearing on the merits of a permanent injunction. Indeed, the trial court afforded Martin and Whitten a chance to present their evidence and arguments against any injunction by holding a second hearing. Martin and Whitten do not argue that did not have a chance to present their entire case or that there would be any additional "evidence of significance" that "would be forthcoming at trial." Therefore, we affirm the judgment of the trial court as to this issue.

The Invasion of Privacy Claim
Martin and Whitten's third argument is that they are entitled to a new trial on the merits of Patterson's invasion-of-privacy claim. We first note that in this case the trial court heard ore tenus testimony.
"`[W]hen a trial court hears ore tenus testimony, its findings on disputed facts are presumed correct and its judgment based on those findings will not be reversed unless the judgment is palpably erroneous or manifestly unjust.' Philpot v. State, 843 So.2d 122, 125 (Ala. 2002). Moreover, when a trial court makes no specific findings of fact, `this Court will assume that the trial judge made those findings necessary to support the judgment.' Transamerica Commercial Fin. Corp. v. AmSouth Bank, N.A., 608 So.2d 375, 378 (Ala. 1992). Under the ore tenus rule, `"appellate courts are not allowed to substitute their own judgment for that of the trial court if the trial court's decision is supported by reasonable inferences to be drawn from the evidence."' Yates v. El Bethel Primitive Baptist Church, 847 So.2d 331, 345 (Ala.2002) (quoting Ex parte Pielach, 681 So.2d 154, 155 (Ala. 1996))."
New Props., L.L.C. v. Stewart, 905 So.2d 797, 799 (Ala.2004). Concerning the elements of the tort of invasion of privacy, our supreme court has defined that tort "`as the intentional wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame, or humiliation to a person of ordinary sensibilities.'" Rosen v. Montgomery Surgical Ctr., 825 So.2d 735, 737 (Ala. 2001) (quoting Carter v. Innisfree Hotel, Inc., 661 So.2d 1174, 1178 (Ala.1995)). Recently our supreme court stated:
"The tort of
"`invasion of privacy consists of four limited and distinct wrongs: (1) intruding into the plaintiff's physical solitude or seclusion; (2) giving publicity to private information about the plaintiff that violates ordinary decency; (3) putting the plaintiff in a false, but not necessarily defamatory, position in the public eye; or (4) appropriating some element of the plaintiff's personality for a commercial use.'

*993 "Johnston v. Fuller, 706 So.2d 700, 701 (Ala.1997). Each of these categories of invasion of privacy has distinct elements, and each category establishes a separate privacy interest that may be invaded. Regions Bank v. Plott, 897 So.2d 239 (Ala.2004)."
S.B. v. Saint James Sch., 959 So.2d 72, 90 (Ala.2006). It is clear from Patterson's complaint, and from the trial-court proceedings, that Patterson sought recovery under the first branch of the tort of invasion of privacy: intrusion into his physical solitude or seclusion.[5]
"In Phillips v. Smalley Maintenance Services, Inc., 435 So.2d 705 (Ala.1983), this Court adopted the Restatement (Second) of Torts definition of the wrongful-intrusion branch of the invasion-of-privacy tort:
"`One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person.'"
Johnston v. Fuller, 706 So.2d 700, 702 (Ala.1997). The commentary to the Restatement definition of this tort adds:
"The defendant is subject to liability under the rule stated in this Section only when he has intruded into a private place, or has otherwise invaded a private seclusion that the plaintiff has thrown about his person or affairs. Thus there is no liability for the examination of a public record concerning the plaintiff, or of documents that the plaintiff is required to keep and make available for public inspection. Nor is there liability for observing him or even taking his photograph while he is walking on the public highway, since he is not then in seclusion, and his appearance is public and open to the public eye. Even in a public place, however, there may be some matters about the plaintiff, such as his underwear or lack of it, that are not exhibited to the public gaze; and there may still be invasion of privacy when there is intrusion upon these matters."
Restatement (Second) of Torts § 652B (1977) cmt. c (emphasis added). This commentary is consistent with the caselaw of this state. For example, in Johnson v. Stewart, 854 So.2d 544, 549 (Ala.2002) (citing I.C.U. Investigations, Inc. v. Jones, 780 So.2d 685 (Ala.2000)), our supreme court stated that, "generally, the observation of another person's activities, when that other person is exposed to the public view, is not actionable under the wrongful-intrusion branch of the invasion-of-privacy tort." See also Key v. Compass Bank, Inc., 826 So.2d 159, 165 (Ala.Civ.App.2001) ("Normally, there is no liability for photographing a person in a public place."). Additionally, we note that "`[t]he thing into which there is intrusion or prying must be, and be entitled to be, private.'" Hogin v. Cottingham, 533 So.2d 525, 531 (Ala.1988) (W. Page Keeton et al., Prosser and Keeton on the Law of Torts, p. 855 (5th ed.1984)). Thus, it seems that generally "surveillance is not an actionable intrusion as long as it is conducted in a *994 reasonable and nonobtrusive manner." 77 C.J.S. Right of Privacy and Publicity § 27. See also Prosser and Keeton on the Law of Torts, p. 855 (stating that "[o]n the public street, or in any other public place, the plaintiff has no legal right to be alone; and it is no invasion of his privacy to do no more than follow him about and watch him there"). On the other hand, "[i]t is true `that the "wrongful intrusion" privacy violation can occur in a public place, when the matter intruded upon is of a sufficiently personal nature.'" Johnson, 854 So.2d at 549 (quoting Phillips v. Smalley Maint. Servs., Inc., 435 So.2d 705, 711 (Ala.1983)) (emphasis added). Indeed, our courts have held that "[o]ne's emotional sanctum is certainly due the same expectations of privacy as one's physical environment." Phillips, 435 So.2d at 711.
To summarize, a wrongful intrusion may occur in a public place, so long as the thing into which there is intrusion or prying is entitled to be private. See Phillips, supra, and Hogin, 533 So.2d at 531 (citing Prosser and Keeton on the Law of Torts, p. 855). Assuming that the matter is entitled to be private, then the court will consider two primary factors in determining whether an intrusion is actionable: (1) the means used, and (2) the defendant's purpose for obtaining the information. See Hogin, 533 So.2d at 531 (citing Prosser and Keeton on the Law of Torts, p. 855), and Johnson v. Corporate Special Servs., Inc., 602 So.2d 385 (Ala.1992); see also 77 C.J.S. Right of Privacy and Publicity § 27 (2006) (citing Hogin, and stating that "[a] primary factor to be considered in determining whether there has been an intrusion is the means used"), and Jenelle Mims Marsh & Charles W. Gamble, Alabama Law of Damages § 36:38 (5th ed. 1049-50).
Applying these principles and the description in § 652B of the Restatement (Second) of Torts regarding intrusion upon seclusion, we first point out that the wrongful intrusion in this case was alleged, in essence, to have been to Patterson's emotional sanctum. The intrusion, however, was not into a matter of a sufficiently personal nature to rise to the level of a wrongful intrusion into Patterson's privacy. As an example, in contrast, in Phillips, 435 So.2d at 711, our supreme court held that the facts of that case supported such a claim when, among other things, the plaintiff in the case had been subjected to intrusive demands, threats, and inquiries into the nature of sex between her and her husband  all occurring two or three times each week while she was at her workplace. In this case no such personal inquiries or demands were made.
Even if we were to assume that the alleged intrusion into Patterson's emotional sanctum was of a sufficiently personal nature to support a claim, we would hold that in this case the methods used by Martin and Whitten to observe and perhaps film Patterson were not "highly offensive to a reasonable person." As stated in Prosser and Keeton on the Law of Torts, supra, it is clear "that there must be something in the nature of prying or intrusion, and that mere noises which disturb a church congregation, or bad manners, harsh names, and insulting gestures in public, are not enough [to state a claim for wrongful intrusion]." Id. at 855. Granted, in some cases the frequency and persistence of unwanted intrusion may constitute a wrongful intrusion into a tort claimant's privacy. See generally Restatement (Second) of Torts § 652B cmt. d (stating as an example that it "is only when . . . telephone calls are repeated with such persistence and frequency as to amount to a course of hounding the plaintiff, that [it] becomes a substantial burden to his existence, that his privacy is invaded"). Significantly, however, the events *995 occurring in this case took place in public, not in Patterson's home, and as such Patterson should have expected a diminished level of privacy. In contrast to the defendant's repulsive behavior in Phillips, Martin and Whitten only drove by Patterson's work site approximately six times over a period of approximately two months, honked the horn of their vehicle, yelled the mayor of Attalla's name, laughed, and indicated that they were filming him. Their conduct toward Patterson may have been annoying and immature, but it was not "highly offensive to a reasonable person." Our courts have been unwilling to create a broad privacy action, with no metes and bounds, that would extend beyond one's dwelling, papers, and private records, creating unknown dangers to unsuspecting routine inquirers. Johnson, 854 So.2d at 548; see also Myrick v. Barron, 820 So.2d 81, 88 (Ala.2001) (on application for rehearing) (Houston, J., concurring specially and stating that "since at least 1997 [when Johnston v. Fuller, 706 So.2d 700 (Ala. 1997), was decided], the invasion-of-privacy claim based upon wrongful intrusion in Alabama has been limited to one's dwelling, papers, and private records").
Although Martin and Whitten requested a new trial, in doing so they contested the sufficiency of the evidence to support the judgment. Therefore, because we find no substantial evidence to support the judgment of the trial court on Patterson's claim of invasion of privacy, that judgment is reversed and the case is remanded for the entry of a judgment consistent with this opinion. See Discovery Zone v. Waters, 753 So.2d 515, 518 (Ala.Civ.App. 1999).

Conclusion
We affirm the judgment of the trial court as to the two issues Martin and Whitten presented regarding the permanent injunction because they did not present any argument regarding the merits of the permanent injunction and because they did not show that they were prejudiced by the trial court's decision to consolidate a hearing on the merits of the injunction with the hearing on the preliminary injunction. We reverse the trial court's judgment in regard to Patterson's invasion-of-privacy claim because Martin's and Whitten's conduct did not violate a privacy right of a sufficiently personal nature to support a claim of wrongful intrusion into Patterson's privacy. Because no substantial evidence supported the trial court's judgment regarding the invasion-of-privacy claim, that portion of the judgment is reversed and the case is remanded for the entry of a judgment consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
MOORE, J., concurs.
PITTMAN, J., concurs specially.
THOMPSON, P.J., concurs in the result, without writing.
BRYAN, J., concurs in the result in part and dissents in part, with writing.
PITTMAN, Judge, concurring specially.
I concur in the main opinion, but I note that it remands the cause for the entry of a judgment in favor of Harvey Martin and David Whitten even though they did not challenge the sufficiency of the evidence by means other than a new-trial motion. In King Mines Resort, Inc. v. Malachi Mining & Minerals, Inc., 518 So.2d 714 (Ala. 1987), our Supreme Court held that if insufficiency of the evidence to support a judgment based upon a jury verdict is raised in a new-trial motion instead of in a motion under Rule 50, Ala. R. Civ. P., "the only relief that can be granted is a new trial" in the event of a reversal. 518 So.2d at 716. However, because the judgment in *996 this case was entered by the trial court after a nonjury trial, a new-trial motion will suffice to preserve an evidentiary-sufficiency question for appellate review (regardless of whether findings of fact are made). See New Props., L.L.C. v. Stewart, 905 So.2d 797, 801-02 (Ala.2004). Because there is no requirement in a nonjury setting that corresponds to the requirement prevailing in a jury setting that a party file a dispositive motion as an absolute prerequisite to a sufficiency challenge, King Mines does not require a new trial on remand in this case.
BRYAN, Judge, concurring in the result in part and dissenting in part.
I respectfully dissent insofar as the main opinion reverses the judgment in favor of Robert Patterson on his invasion-of-privacy claim. On the basis of the ore tenus evidence before it, the trial court could have found that Harvey Martin and David Whitten had repeatedly shadowed Patterson for the purpose of intimidating and harassing him and that Whitten had threatened Patterson's life. That conduct is actionable under the wrongful-intrusion prong of the tort of invasion of privacy. Cf. Alabama Elec. Coop., Inc. v. Partridge, 284 Ala. 442, 445, 225 So.2d 848, 850 (1969) (noting with approval that other jurisdictions had held that "violation of the right of privacy may be actionable where the investigation of a person being watched, shadowed, or kept under surveillance is pursued in an offensive or improper manner"). The suggestion that a reasonable person would not find Martin's and Whitten's conduct highly offensive is absurd  indeed, the Alabama Legislature has classified such conduct as the crime of stalking, which is a felony. See § 13A-6-90(a), Ala.Code 1975 ("A person who intentionally and repeatedly follows or harasses another person and who makes a credible threat, either expressed or implied, with the intent to place that person in reasonable fear of death or serious bodily harm is guilty of the crime of stalking.").
I concur in the result with regard to the other aspects of the main opinion.
NOTES
[1] Patterson never offered an explanation for why Martin may have been inclined to yell "O'Rear." It would appear from the context of this case, however, that Martin's intent was to indicate to Patterson that he was keeping surveillance of Patterson and to suggest that there was a shady connection between Mayor O'Rear and Patterson.
[2] The trial court's reference to a previous order may not be sufficient to meet the specificity requirements of a permanent injunction, see Rule 65(d)(2), Ala. R. Civ. P. (stating that "[e]very order granting an injunction shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained"); however, Martin and Whitten have not raised compliance with this rule as an issue in their appeal.
[3] Additionally, although Martin and Whitten assert that there was no evidence presented by Patterson that "would show guilt relating to any action on the part of Whitten," we note that Whitten admitted that he rode by Patterson's work site with Martin on at least one occasion; also, when Whitten was served with Patterson's lawsuit, Whitten allegedly made threatening comments regarding Patterson.
[4] Rule 65(a)(2), Fed.R.Civ.P., is identical to Rule 65(a)(2), Ala. R. Civ. P.
[5] To the extent the trial court could have been inclined to determine that Patterson sought relief on the basis that Martin's and Whitten's actions put Patterson in a false light before the public, and, thus invaded his privacy under that category of the tort, we note that Patterson made no effort to indicate that any implied allegations of improper bidding or an improper relationship with the mayor's office were false. "[U]nlike defamation, truth is not an affirmative defense to a false-light claim; rather, `falsity' is an element of the plaintiff's claim, on which the plaintiff bears the burden of proof." Regions Bank v. Plott, 897 So.2d 239, 244 (Ala.2004)