THOMAS, Judge.
In September 2012, Jacobs Broadcast Group, Inc. (“Jacobs”), sold four radio stations (“the stations”) to Jeff Beck Broadcasting Group, LLC (“Beck”). The contract memorializing that sale contained a noncompetition agreement prohibiting Jacobs from competing with Beck for a period of three years. The noncompetition agreement provided, in pertinent part:
“B. In conjunction with the Sale Agreement, as an inducement to [Beck] entering into the Sale Agreement and as a condition to the consummation of the Acquisition, [Jacobs] has agreed that it and its principals will refrain from competing with [Beck] as described herein-below for a stated period of time in order that [Beck] may obtain the contemplated benefits from the acquisition and the goodwill associated therewith.
“NOW, THEREFORE, in consideration of the mutual promises made in the Agreement and the consideration to be received by [Jacobs] in connection with the Sale Agreement transaction and for other good and valuable consideration, the simultaneous receipt and adequacy of which are hereby acknowledged, [Beck] and [Jacobs] (collectively referred to as ‘Parties’) hereby agree as follows:
[[Image here]]
“2. [Jacobs] agrees that, during the term of this Agreement, neither it nor any of its principals will engage in any undertaking or enterprise in competition with [Beck]. For purposes of this agreement, the term ‘compétition’ shall be defined to include engaging, participating or investing in or assisting, whether as a principal, officer, director,' trustee, employee, agent or consultant, or in any other capacity, directly or indirectly, in the conduct or operation of any radio broadcast station, in the sale of advertising or promotional services or in any activity which is similar to that in which the Stations are or have been engaged, within the geographical area covered by the Stations’ primary service contours, *348 as defined by the [Federal Communications] Commission’s Rules.
Years before the sale of the stations, Jacobs had applied to the Federal Communications Commission (“the FCC”) for a translator construction permit (“the permit”). The record reflects that such a permit issued by the FCC allows its owner to build and operate a facility capable of converting AM signals to the FM frequency band for broadcast. Jacobs had not been awarded the permit at the time it sold the stations to Beck, and it could therefore not sell the permit to Beck at that time. When Jacobs received notice that it had been awarded the permit, it contacted Beck and offered to sell Beck the permit. Beck declined to purchase the permit. Jacobs then contacted a competing radio station serving the Calhoun County area and offered to sell it the permit. -
On May 1, 2013, Beck filed a complaint in the Calhoun Circuit Court seeking a temporary restraining order (“TRO”), a preliminary injunction, and a permanent injunction restraining Jacobs from selling or transferring the permit, because, Beck contended, Jacobs’s sale of the permit would violate the noncompetition agreement.[1] Beck also filed a verified motion for a TRO, which the trial court granted on May 10, 2013.[2] On May 13, 2013, the trial court entered an order setting a hearing on the matter for May 21, 2013.
Jacobs filed a motion to dismiss Beck’s complaint and a motion to dissolve the TRO on May 14, 2013. On that same day, the trial court reset the May 21, 2013, hearing for May 15, 2013, stating in its order that it would consider Jacobs’s motion to dissolve at the May 15, 2013, hearing. Both parties appeared at the hearing on May 15, 2013, at which time the trial court stated that it would consider both the motion to dissolve and Beck’s request for a preliminary injunction. Counsel for Jacobs objected, arguing that a preliminary injunction “can’t be issued without notice” and that it was not “prepared to go against the preliminary injunction” because it did not have its “FCC expert here to testify regarding [the permit].” Counsel for Beck argued that the TRO would expire after 10 days and that it should be entitled to put on evidence regarding the elements required to establish a right to a preliminary injunction at the May 15, 2013, hearing because of the need for the hearing on the preliminary injunction to be held before the expiration of the TRO. The trial court overruled Jacobs’s objection, noting specifically that 5 days of the 10-day period during which the TRO would remain effective had already elapsed.
After taking the testimony of James Jacobs and Jeff Beck, the principal owners of Jacobs and Beck, respectively, the trial court concluded the hearing; from the bench, the trial court ordered the par *349 ties to submit post-hearing briefs by May 17, 2013. On May 22, 2013, the trial court entered an order issuing a preliminary injunction, in which it specifically enjoined Jacobs from selling the permit pending trial of the matter or pending further order of the court.[3] Jacobs timely appealed from the order issuing the preliminary injunction. See Rule 4(a)(1)(A), Ala. R.App. P. (providing that a party, may appeal “any interlocutory order granting, continuing, modifying, refusing, or dissolving an injunction, or refusing to dissolve or to modify an injunction” by filing a notice of appeal within 14 days of the entry of that order).
Our supreme court has set out the standard of review governing the appeal of an order granting a preliminary injunction as follows:
“‘The decision to grant or to deny a preliminary injunction is within the trial court’s sound discretion. In reviewing an order granting a preliminary injunction, the Court determines whether the trial court exceeded that discretion.’ SouthTrust Bank of Alabama, N.A. v. Webb-Stiles Co., 931 So.2d 706, 709 (Ala.2005).
“A preliminary injunction should be issued only when the party seeking an injunction demonstrates:
“ ‘ “(1) that without the injunction the [party] would suffer irreparable injury; (2) that the [party] has no adequate remedy at law; (3) that the [party] has at least a reasonable chance of success on the ultimate merits of his case; and (4) that the hardship imposed on the [party opposing the preliminary injunction] by the injunction would not unreasonably outweigh the benefit accruing to the [party seeking the injunction].” ’
“Ormco Corp. v. Johns, 869 So.2d 1109, 1113 (Ala.2003)(quoting Perley v. Tapscan, Inc., 646 So.2d 585, 587 (Ala.1994)).
“To the extent that the trial court’s issuance of a preliminary injunction is grounded only in questions of law based on undisputed facts, our longstanding rule that we review an injunction solely to determine whether the trial court exceeded its discretion should not apply. We find the rule applied by the United State Supreme Court in similar situations to be persuasive: ‘We review the District Court’s legal rulings de novo and its ultimate decision to issue the preliminary injunction for abuse of discretion.’ Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal, 546 U.S. 418, 428, 126 S.Ct. 1211, 163 L.Ed.2d 1017 (2006)....”
Holiday Isle, LLC v. Adkins, 12 So.3d 1173, 1175-76 (Ala.2008).
On appeal, Jacobs’s main argument is that the trial court erred in holding a consolidated hearing on its motion to dissolve the TRO and Beck’s request for a preliminary injunction without giving Jacobs sufficient notice that the preliminary injunction would be considered at the May 15, 2013, hearing. Indeed, Rule 65(a)(1), Ala. R. Civ. P., states that “[n]o preliminary injunction shall be issued without notice to the adverse party.” Our supreme court has twice considered the issue whether a lack of notice that a trial court intends to consider a preliminary injunction at a particular hearing is sufficient basis to reverse an order issuing that in *350 junction. See Southern Homes, AL, Inc. v. Bermuda Lakes, LLC, 57 So.3d 100, 104-05 (Ala.2010); Funliner of Alabama, L.L.C. v. Pickard, 873 So.2d 198, 219 (Ala.2003). In both cases, our supreme court reversed a trial court’s order issuing a preliminary injunction because, it concluded, the party opposing the injunction did not have adequate notice to present an argument against the injunction.
In Southern Homes, the appellant, Southern Homes, had received only two hours’ notice of the hearing on the preliminary injunction, had been able to appear at the hearing only by telephone, and had not been able to submit evidence, to call witnesses, or to present any written argument in opposition to the motion seeking the preliminary injunction. Southern Homes, 57 So.3d at 105. Our supreme court relied on Granny Goose Foods, Inc. v. Brotherhood of Teamsters and Auto Truck Drivers Local No. 70 of Alameda County, 415 U.S. 423, 94 S.Ct. 1113, 39 L.Ed.2d 435 (1974), which interpreted the notice requirement of Rule 65(a)(1), Fed.R.Civ.P., the language of which is nearly identical to the language of Alabama’s version of Rule 65(a)(1).[4] According to our supreme court, the Granny Goose Foods Court stated that, before a preliminary injunction could issue, the party against whom the injunction would issue must be “ ‘given a fair opportunity to oppose the application [for a preliminary injunction] and to prepare for such opposition.’ ”[5] Southern Homes, 57 So.3d at 104 (quoting Granny Goose Foods, 415 U.S. at 434 n. 7). After noting that Southern Homes had been unable to submit written arguments, to offer evidence, or to call any witnesses, our supreme court determined that the order issuing the preliminary injunction should be reversed because Southern Homes had not received adequate notice of the hearing to be able to prepare to oppose the preliminary injunction. Id.
Our supreme court also determined that the preliminary-injunction order in Funliner had been issued without providing the opponents notice that the prelimi *351 nary injunction would be considered at a hearing on class certification. Funliner, 873 So.2d at 219. In fact, the trial court in Funliner provided absolutely no notice to any party that it would consider the request for a preliminary injunction at that hearing. Id. Because the opponents of the preliminary injunction had no notice that they should oppose the injunction during the class-certification hearing, our supreme court stated that it “ha[d] no difficulty” determining that the trial court had exceeded its discretion in considering the preliminary injunction at the class-certification hearing without notice that it intended to do so, and it dissolved the preliminary injunction based on the lack of notice.[6] Id.
We conclude that both Southern Homes and Funliner are distinguishable from the present case. Unlike the opponents of the preliminary injunctions in Southern Homes and in Funliner, Jacobs had notice that a TRO had been entered and notice of the request for a preliminary injunction; Jacobs had moved for dissolution of the TRO, which precipitated, at least in part, the hearing; Jacobs’s counsel was present at the hearing, offered testimonial evidence, and cross-examined Beck’s witness; and Jacobs was permitted to, and did, submit a seven-page post-hearing brief to the trial court before the trial court ruled on the request for a preliminary injunction. Furthermore, Jacobs, unlike the opponents in both Southern Homes and Fun-liner, was prepared to present argument relating to the propriety of the TRO, and, because the elements necessary to.establish the right to a TRO and the right to a preliminary injunction are identical, see Lott v. Eastern Shore Christian Ctr., 908 So.2d 922, 927 (Ala.2005) (“The elements required for the issuance of a TRO are the same as the elements required for the issuance of a preliminary injunction.”), Jacobs had the ability to present a defense to the issuance of the preliminary injunction while it argued about the propriety of the TRO. See United States v. Alabama, 791 F.2d 1450, 1458 (11th Cir.1986) (indicating that the “conversion of a TRO hearing to a preliminary injunction hearing” is not presumptively an abuse of the trial court’s discretion because of the similarities in the two types of relief).
Beck, relying on Martin v. Patterson, 975 So.2d 984, 991-92 (Ala.Civ.App.2007), argues that Jacobs was required, and failed, to demonstrate prejudice as a result of the allegedly inadequate notice that the request for a preliminary injunction would be considered at the May 15, 2018, hearing. We held in Martin that a party objecting to the consolidation of a hearing on a preliminary injunction with a final trial on the merits under Rule 65(a)(2), Ala. R. Civ. P., must not only demonstrate surprise that the hearing was consolidated with a trial on the merits but also demonstrate that the consolidation resulted in prejudice to that party. Martin, 975 So.2d at 991-92. To demonstrate such preju *352 dice, we explained, would require some proof that the party had lacked the opportunity to present its entire case or that the party had “additional ‘evidence of significance’ that “would be forthcoming at trial.’ ” Id. at 992 (quoting 11A Charles Alan Wright et al., Federal Practice and Procedure: Civil § 2950 (2d ed. 1995) (“Wright & Miller”)); see also Atlantic Richfield Co. v. F.T.C., 546 F.2d 646, 651 (5th Cir.1977) (declining to find error in a Rule 65(a)(2), Fed.R.Civ.P., consolidation — i.e., consolidating a hearing on a preliminary injunction with a final trial on the merits — because the complaining party failed to show prejudice resulting from the lack of notice of the consolidation). Furthermore, to establish the required element of prejudice, specific allegations regarding the evidence that allegedly was not or could not have been presented must be made by a party objecting to the consolidation of any of the hearings that might be held under Rule 65. See Roberts v. Community Hosps. of Indiana, Inc., 897 N.E.2d 458, 466 (Ind.2008) (“[T]he prevailing federal rule is that allegations of prejudice must be specific.”).
We realize that the issue in Martin is slightly different than the one presented here. However, we can see no basis for distinguishing the consolidation of a trial on the merits with a preliminary-injunction hearing under Rule 65(a)(2) from the consolidation of a hearing on a motion to dissolve a TRO from a hearing on a request for a preliminary injunction held under Rule 65(b).[7] In fact, under Rule 65(b), because the TRO was allegedly issued without notice to Jacobs, the trial court was required to set Beck’s motion for a preliminary injunction for a hearing “at the earliest possible time” and Beck was required to “proceed with the application for a preliminary injunction” at that hearing; because Rule 65(b) also permits a motion to dissolve a TRO to be set with merely two days’ (or even less) notice to the party who procured the TRO, it seems apparent that the trial court could, in its discretion, consolidate those hearings and hold them both “as expeditiously as the ends of justice require.”[8] Thus, we conclude that, in order to secure a reversal of the order granting the preliminary injunction, Jacobs must prove that it suffered prejudice resulting from the lack of advance notice that Beck’s request for a pre *353 liminary injunction would be considered at the May 15, 2013, hearing.
In its brief on appeal, Jacobs does not specify what prejudice befell it as a result of the consolidation of the hearings on its motion to dissolve the TRO and Beck’s request for a preliminary injunction. At the hearing, Jacobs mentioned that it could not call a witness it referred to as its FCC expert; however, Jacobs did not indicate what testimony it intended to adduce from the FCC expert or how that testimony would be relevant to the factors that are considered by a trial court considering the issuance of a preliminary injunction. At the hearing, Beck and Jacobs presented testimony, which was largely consistent, explaining what the permit would allow and that the permit would result in its purchaser’s ability to broadcast an AM signal on the FM frequency band in at least some portion of the area covered by the noncompetition agreement. Nothing in the record indicates that the FCC expert Jacobs mentioned at the hearing would have presented the trial court with “ ‘evidence of significance’ ” had he or she been able to testify. Martin, 975 So.2d at 992 (quoting Wright & Miller, § 2950). Jacobs failed to present specific allegations of prejudice at the hearing or in its brief on appeal. Thus, we cannot conclude that the trial court’s order issuing a preliminary injunction should be reversed because of the lack of advance notice to Jacobs of the consideration of the merits of Beck’s request for a preliminary injunction at the hearing on Jacobs’s motion to dissolve the TRO.
Jacobs also asserts on appeal arguments regarding the sufficiency of the evidence to support the issuance of the preliminary injunction; however, those arguments are supported by only one citation to general authority setting out the elements required to secure a preliminary injunction. Jacobs’s argument that Beck failed to establish immediate and irreparable injury and a lack of an adequate remedy at law áre woefully underdeveloped, containing very little in the way of discussion or analysis. Likewise, Jacobs’s reference to Beck’s failure to pursue administrative remedies with the FCC is similarly void of development and also lacks citation to any authority indicating that Beck was required to exhaust any administrative remedies before seeking enforcement of the noncompetition agreement. “Rule 28(a)(10)[, Ala. R.App. P.J requires that arguments in briefs contain discussions of facts and relevant legal authorities that support the party’s position. If they do not, the arguments are waived.” White Sands Grp., L.L.C. v. PRS II, LLC, 998 So.2d 1042, 1058 (Ala.2008). Thus, we conclude that Jacobs has waived those arguments, and we decline to consider them further.
Furthermore, to the extent Jacobs might be arguing in its brief to this court that the noncompetition agreement is void, in whole or in part, or that the agreement does not prohibit the sale of the permit, we note that Jacobs did not bother to state those arguments in its appellate brief; instead, Jacobs merely mentioned that it had presented caselaw to the trial court, presumably in its post-hearing brief, that “directly rebutted and rebuffed” Beck’s arguments relating to the noncompetition agreement. Even if we were inclined to consider Jacobs’s passing reference to the “case law [it had] cited” in the proceedings below as an attempt to incorporate by reference that post-hearing brief, such a procedure is not sanctioned by Rule 28, Ala. R.App. P. See Perry v. State Pers. Bd., 881 So.2d 1037, 1039 (Ala.Civ.App.2003), quoted with approval by Bentley Sys., Inc. v. Intergraph Corp., 922 So.2d 61, 85 n. 8 (Ala.2005) (concluding that Rule *354 28, Ala. R.App. P., does not permit the incorporation of briefs filed in the trial court into a party’s appellate brief). Without such incorporation, Jacobs’s brief is devoid of any argument that the noncom-petition agreement provides no basis for the preliminary injunction.
Jacobs argues that the trial court’s order granting the preliminary injunction should be reversed because Beck did not properly certify in its May 1, 2013, application for a TRO that it had attempted to give Jacobs notice of the application for a TRO. Indeed, as Jacobs points out, our supreme court has held that
“Rule 65(b), [Ala. R. Civ. PJ, does not permit an ex parte T.R.O. without a certification in writing to the trial court showing the efforts, if any, made to give notice to the adversary, accompanied by reasons supporting his claim that notice should not be required. The plain language of this rule assumes that notice is prima facie required and is intended to allow the trial court a studied opportunity to weigh the effect of an absence of notice in deciding to grant or refuse such extraordinary relief.”
International Molders & Allied Workers Union, AFL-CIO-CLC v. Aliceville Veneers Div., Buchanan Lumber Birmingham, 348 So.2d 1385, 1390 (Ala.1977). Thus, it appears that the trial court may well have erred in granting Beck’s application for a TRO.
Jacobs’s authority for this argument, however, does not support a reversal of the order issuing the preliminary injunction based on the deficiency in the procedure utilized to secure the TRO. As our supreme court further explained, “[njever-theless, the validity of the later [preliminary] injunction is not to be governed by the existence of the temporary restraining order which, had the motion [to dissolve] been insisted upon, would have been subject to dissolution for the deficiencies identified.” Aliceville Veneers, 348 So.2d at 1390. Our supreme court stated that an order issuing' a preliminary injunction “must be weighed by its own pleading and proof.” Id. Therefore, any deficiency in the procedure that led to the TRO cannot support a reversal of order issuing the preliminary injunction.
Finally, Jacobs argues that the trial court should not have considered the post-hearing brief submitted by Beck because it was not electronically filed as required by an Administrative Order of the Alabama Supreme Court dated September 6, 2012. That Administrative Order, Jacobs argues, requires a party who files a document in open court to also file that document electronically on the same day. However, Jacobs admits that Beck’s post-hearing brief was not filed in open court but was, instead, submitted directly to the judge’s office. Rule 5(e), Ala. R. Civ. P., which governs the filing of pleadings and other papers with the trial court, provides that “the judge may permit the papers to be filed with the judge, in which event, the judge shall note thereon the filing date and forthwith transmit them to the office of the clerk.” Thus, because Jacobs admits that Beck filed its post-hearing brief with the judge and because the record does not reflect that the judge did not permit such practice, we cannot agree that Beck was required to electronically file the post-hearing brief or that its failure to do so should have precluded the trial court from having relied upon it.
Because we cannot conclude that Jacobs presented any proof that it was prejudiced by the consolidation of the hearing on its motion to dissolve the TRO with a hearing on Beck’s request for a preliminary injunction, we reject Jacobs’s argument that the order issuing the preliminary injunction should be reversed based on the lack of *355 advance notice that Beck’s request for a preliminary injunction would be considered at the hearing on Jacobs’s motion to dissolve the TRO. Because we also conclude that Jacobs makes no meritorious argument in favor of reversing the order issuing the preliminary injunction, we affirm that order.
AFFIRMED.
PITTMAN and MOORE, JJ., concur.
THOMPSON, P.J., concurs in the result, without writing.
DONALDSON, J., dissents, with writing.

. The complaint also named as a defendants James Jacobs, individually, and certain fictitiously named parties; James Jacobs is the principal owner of Jacobs. The claims against James Jacobs were dismissed, and he is not a party to this appeal.

. The trial court’s order states that it was entering a preliminary injunction; however, the order further states that the injunction would expire after 10 days, indicating that, in fact, the trial court granted a TRO, which is limited by Rule 65(b), Ala. R. Civ. P., to a period of 10 days, unless extended for good cause shown. See Rule 65(b) (stating that a TRO "shall expire by its terms within such time after entry not to exceed ten (10) days, as the court fixes (except in domestic relations cases, the ten (10-) day limitation shall not apply), unless within the time so fixed the order for good cause shown is extended or unless the party against whom the order is directed consents that it may be extended for a longer period”).

. A preliminary injunction has as its purpose to maintain the status quo pending the resolution of the action on its merits. TFT, Inc. v. Warning Sys., Inc., 751 So.2d 1238, 1242 (Ala. 1999), overruled on other grounds by Holiday Isle, LLC v. Adkins, 12 So.3d 1173, 1176 (Ala.2008).

. As is well established, federal caselaw interpreting the Federal Rules of Civil Procedure may be persuasive authority when interpreting the Alabama Rules of Civil Procedure, especially when the corresponding federal rule is nearly identical to the Alabama Rule of Civil Procedure being considered. First Baptist Church of Citronelle v. Citronelle-Mobile Gathering, Inc., 409 So.2d 727, 729 (Ala.1981).

. The parameters of that "fair opportunity” have been litigated repeatedly in the federal courts since Granny Goose Foods was decided. See, e.g., Ciena Corp. v. Jarrard, 203 F.3d 312, 319 (4th Cir.2000) (affirming the entry of a preliminary injunction on two days’ notice and stating that, "[i]n the specific and time-sensitive context of interlocutory injunctions, in virtually every case the court establishes the timing of hearings based on the immediacy of the factual circumstances and the relevant equities of the parties”); All Care Nursing Serv., Inc. v. Bethesda Mem’l Hosp., Inc., 887 F.2d 1535, 1538 (11th Cir.1989) (determining that 2-day telephone notice of a hearing on a preliminary injunction deprived opponents of a "fair and meaningful opportunity to oppose” the injunction, in large part because the trial judge allowed each party only 30 minutes to present its arguments and refused to allow witnesses despite the complexity of the facts and the number of parties before the court); People of State of Illinois ex rel. Hartigan v. Peters, 871 F.2d 1336, 1340 (7th Cir.1989) (finding a one-day notice of a hearing on a preliminary injunction sufficient to satisfy due-process standards); United States v. Alabama, 791 F.2d 1450, 1458 (11th Cir.1986) (finding no prejudice where opponent of preliminary injunction was given either three or only one days’ written notice of the hearing on a preliminary injunction because the opponent had "not demonstrate^] persuasively that it was prejudiced by short notice [or] ... show[ed] how its argument would have been materially different with more warning").

. The result in both Southern Homes and Fun-liner underscores the fact that, as the federal courts have indicated, "[t]he sufficiency of notice prior to the issuance of a preliminary injunction is a matter left within the discretion of the trial court," United States v. Alabama, 791 F.2d 1450, 1458 (11th Cir.1986), and the amount of notice required necessarily varies depending on the circumstances of each case. See Four Seasons Hotels & Resorts, B.V. v. Consorcio Barr, S.A., 320 F.3d 1205, 1212 (11th Cir.2003) (noting that short notice periods have been accepted as adequate but determining that a two-day notice of a hearing on a preliminary injunction was not adequate where the opponent was located in Venezuela and ‘‘[t]he two day notice period provided insufficient time to read the pertinent documents, obtain and consult with counsel, and locate witnesses or obtain affidavits supporting" its position).

. Rule 65(b) provides, in pertinent part:
"In case a temporary restraining order is granted without notice, the motion for a preliminary injunction shall be set down for hearing at the earliest possible time and takes precedence of all matters except older matters of the same character; and when the motion comes on for hearing the party who obtained the temporary restraining order shall proceed with the application for a preliminary injunction and, if he does not do so, the court shall dissolve the temporary restraining order. On two (2) days’ notice to the party who obtained the temporary restraining order without notice or on such shorter notice to that party as the court may prescribe, the adverse party may appear and move its dissolution or modification and in that event the court shall proceed to hear and determine such motion as expeditiously as the ends of justice require.”

. We note that, in Granny Goose Foods, the United States Supreme Court explained that a hearing on a motion to dissolve a TRO and a hearing on a request for preliminary injunction could be consolidated if the parties were in position to go forward on the request for the preliminary injunction. Granny Goose Foods, 415 U.S. at 441. If the parties were not prepared to do so, the Granny Goose Foods Court further explained, "the appropriate procedure would be for the district court to deal with the issues raised in the motion to dissolve or modify the restraining order, but to postpone for a later hearing, still within the time limitations of Rule 65(b), the application for a preliminary injunction.” Id. (citing C. Wright & A. Miller, Federal Practice & Procedure: Civil § 2954, p. 523 (1973 ed.)).